## Sellwood *v.* Gray & DeLashmutt.

Mortgage.—In this state, a mortgage does not operate, as at common law, to vest in the mortgagee an estate upon condition, the breach of which works a forfeiture of the estate and becomes absolute.

Idem.—It is, in fact, what the parties intended, and as equity treated it, a mere security for the payment of the debt or obligation, and serves simply to create a lien or incumbrance upon the property. It is still the property of the mortgagor, in law and in equity; is liable for his debts; may be sold under execution, or conveyed or devised; is subject to dower, or may be again mortgaged, as any other estates in land.

IDEM—RIGHT OF REDEMPTION.—This is a valuable right, and exists not only in the mortgagor himself, but in every other person who has an interest in, or legal or equitable lien upon, the mortgaged premises, and includes judgment creditors, all of whom may insist upon a redemption of the mortgage. One cannot, against his consent, be deprived of this right, without due process of law.

IDEM—CREDITORS.—To bar a creditor's right of redemption, he must be made a party to the foreclosure; otherwise, the proceeding, as to him, will be a nullity.

IDEM—FORECLOSURE.—The effect of a statute foreclosure is to transfer to the purchaser the rights of the mortgagee, so far as he has any claim or interest in the mortgaged premises for the security of his debt, and also to transfer to him so much of the equity of redemption as was not bound by the lien of a junior mortgage or judgment.

APPEAL from Multnomah County.

*W. W. Chapman*, for appellant.

*H. B. Nicholas*, for respondents.

By the Court, LORD, J.:

This is a suit instituted by the plaintiff, as a senior mortgagor, to compel the defendants to redeem his mortgage, or that they be foreclosed. The facts out of which the controversy arose are: That on the 1st day of February, 1875, the plaintiff loaned to C. M. Carter the sum of $3,000, and took a note therefor payable two years after said date, with interest at the rate of one per cent. per month, payable monthly, secured by a mortgage on blocks 133 and 110, in Caruthers' addition, and blocks 35, 47 and 58 in Carter's addition to the city of Portland. That by the terms of said mortgage, default in the payment of any installment of interest should render the entire sum, both principal and interest, then accrued, due, and the mortgage might be foreclosed. That on the 24th day of January, 1877, the plaintiff commenced suit to foreclose said mort-

gage against Carter and wife, who executed the mortgage, and Geo. P. Gray, one of the defendants in this suit, who had, in the meantime, obtained a judgment against Carter, which was a lien on his interest in the mortgaged property. Gray was not served with the summons, and made no appearance in the suit. That on the 24th day of February, 1877, a decree was rendered by the court, in said suit, in favor of the plaintiff for the amount due on the note, and attorneys' fees, and directing a sale of the mortgaged property to satisfy the same. That in pursuance of such decree, and on the 9th day of March, 1877, the said property was sold by the sheriff, and the plaintiff became the purchaser for the sum of $750, and, after due confirmation of such sale, received a sheriff's deed for the property, and entered upon the possession of the premises. Subsequently, Gray caused an execution to be issued upon his judgment, which was a junior lien, and sold the same property, on the 11th day of February, 1878, and the defendant, DeLashmutt, became the purchaser for the sum of $32, and on the 10th day of May, 1878, received a sheriff's deed for the property. At the time of making the loan to Carter, the plaintiff received from him, by assignment, as additional and collateral security for the repayment of such loan, three promissory notes against P. A. Marquam, amounting altogether to the sum of $2,450, bearing date December 11, 1874, and payable two years and ten months thereafter, with interest at the rate of ten per cent. per annum, secured by mortgage on the real property of said Marquam. That on the 4th day of April, 1879, the plaintiff, without any knowledge, as he alleges, of the sale under the judgment of the defendant Gray, entered an acknowledgement of satisfaction upon the margin of the decree entered in the foreclosure suit, in

words, to wit: "Full payment of satisfaction of this judgment is hereby acknowledged." That on the 8th day of September, 1878, the plaintiff executed a quit-claim deed for block 133, in Caruthers' addition, to D. P. Thompson, for the consideration of $1,000. The defendant, DeLash mutt, afterward recovered possession of the property in an action of ejectment against Sellwood, the plaintiff herein, and the said D. P. Thompson, and subsequently conveyed, by quit-claim deed, block 133 back to the said Thompson. Upon this state of facts, the plaintiff has brought this suit for the purpose of compelling the defendants to redeem his mortgage, for the full amount of accruing interest, or else that a decree of foreclosure be entered against them, barring all their rights and interests in the mortgaged property.

As preliminary to, and for a better understanding of the question involved and to be decided, it will be necessary to ascertain the legal and equitable relations which the parties respectively occupy to each other. In this state, a mortgage does not operate, as at common law, to vest in the mortgagee an estate upon condition, the breach of which works a forfeiture of the estate, and renders it absolute. It is, in fact, what the parties intended, and as equity treated it, a mere security for the repayment of the debt or obligation, and serves simply to create a lien or encumbrance upon the property. The title, both before and after condition broken, remains in the mortgagor until foreclosure and judicial sale. The mortgage works no change of ownership in the property. It is still the property of the mortgagor, in law and in equity; is liable for his debts; may be sold under execution, conveyed or devised; is subject to dower, or may be again mortgaged, as any other estate in land. Nor do any of the qualities or incidents of an estate in land

attach in the mortgagee; he has but a lien upon the land as a security for repayment, and which cannot operate to affect the possession of the mortgagor without his consent, or to transfer his estate in the land, except after default, and by force of a judicial sale under a decree of foreclosure. But before such proceedings are had, payment of the debt by the mortgagor will extinguish the lien and free the estate from the mortgage. Although this right of the mortgagor to intervene, after default, and before judicial sentence and discharge the mortgage, is usually termed his "equity of redemption," it is not so in fact, or in equity, in the sense which recognizes the legal estate in the mortgagee, defeasible before and absolute after default, and which, on the condition of paying his debt, allowed him to redeem a forfeited estate and demand a re-conveyance. (*Kortright* v. *Kady*, 21 N. Y., 365.) His equity of redemption is the right to redeem from the mortgage—to pay off the mortgage debt—until this right is barred by a decree of foreclosure; but until this right is barred, his estate, in law or in equity, is just the same after as it was before default. It is a right, though, of which the law takes no cognizance, and is enforceable only in equity, and has nothing to do with our statute of redemptions. (*Wiley, Banks & Co.* v. *Ewing et al.*, 47 Ala., 418; *Anson* v. *Anson*, 20 Iowa, 56.) This is a valuable right, and exists not only in the mortgagor himself, but in every other person who has an interest in, or legal or equitable lien upon, the mortgaged premises, and includes judgment creditors, all of whom may insist upon a redemption of the mortgage. (4 Kent's Com., 162; 2 Story's Eq., sec. 1023; Willard's Eq. Jur., 447; *Holmes* v. *Bybee*, 34 Ind., 262.) Nor can one, against his consent, be deprived of this right without due process of law. To bar

his right of re emption, he must be made a party to the
foreclosure, or the proceeding, as to him, will be a nullity.
(Jones on Mort., secs. 1047, 1395, 1396.)   When, therefore,
the plaintiff instituted his suit of foreclosure against Carter,
the mortgagor, and obtained a decree for the sale of the
property, without making the defendant, Gray, a party, the
proceeding, as to him, was a nullity.   But the sale effected
some important results.   Except as to the defendant, Gray,
who was not bound by it, it had operated to cut off the right
of the mortgagor to redeem, and to change the ownership of
the property from the mortgagor to the mortgagee, who
had become the purchaser.   The relation of the parties was
changed, and stood thus:   As to the defendant, Gray, it
stood as if no such sale had been made.   He had a right to
redeem by paying the amount of the incumbrance.   The
plaintiff, as purchaser at the foreclosure and sale, took all
the rights of his senior mortgagee, and so much of the mort-
gagor's equity of redemption as was not bound by the sub-
sequent lien of the defendant, Gray.   In *Vroom* v. *Ditmas*,
4 Paige, 531, the chancellor says:   " The effect of a statute
foreclosure is to transfer to the purchaser the rights of the
mortgagee, so far as he has an claim or interest in the
mortgaged premises for the security of his debt, and also to
transfer to him so much of the equity of redemption as was
not bound by the lien of a junior mortgage or judgment.
The title which Bacon acquired in this case, under the sale
to him, was therefore precisely the same as if he had taken
an assignment of Watson's mortgage and the deed of Dit-
mas and wife of all their interest in the premises, subject,
of course, to the right of any intermediate incumbrancer, by
mortgage or judgment, to redeem the premises by the pay-
ment of the amount due on the Watson mortgage at the

time of the sale, with interest thereon, if the legal claims of such subsequent incumbrances were not paid." So here, the *title* which the plaintiff acquired under the sale to him was precisely the same as a third party would have acquired at such sale by the assignment of his mortgage and the deed of Carter and wife of all their interest in the premises subject only to the right of the defendant, Gray, as a junior lien-holder, to redeem. (See Hilliard on Mort., 158, sec. 56; *Gower* v. *Winchester*, 33 Iowa, 303; *Rogers* v. *Holyoke*, 14 Minn., 225.) He had all the estate of the mortgagor and mortgagee, subject only to the lien of the Gray judgment and the right of the redemption under it. As all persons otherwise entitled, who were not made parties to the suit, may redeem after and notwithstanding a foreclosure and sale (Pomeroy's Eq. Jur., sec. 1220 and note), so does the corresponding right belong to the purchaser at a sale under a foreclosure suit, whether upon his mortgage or not, to which a subsequent incumbrancer was not made a party, to maintain a suit to compel such subsequent incumbrancer to redeem, or be foreclosed. (*Parker* v. *Child*, 25 N. J. Eq. 41.; *Shaw* v. *Heisey*, 48 Iowa, 468.) In such a suit, the rights of the senior mortgagee are the equivalent of the junior in the enforcement of the remedy for redemption. One can require the other to redeem from the mortgage, or be foreclosed of his right of redemption, and the other, upon paying or tendering the amount of the mortgage debt, is entitled to redeem and be subrogated to the rights of the mortgagee. "The party offering to redeem," says Bradley, J., in *Collins* v. *Riggs*, 14 Wall., 491, "proceeds upon the hypothesis that, as to him, the mortgage has never been foreclosed, and is still in existence; therefore, he can only lift it by paying it." (*Knowles* v. *Rablin*, 20

Iowa, 101; *Gage* v. *Brewster*, 31 N. Y., 218; *Johnson* v. *Harmon*, 19 Iowa, 56; *Holmes* v. *Bybee*, 34 Ind., 262.) The party, therefore, seeking to compel the junior encumbrancer to redeem must proceed upon a like hypothesis, that his mortgage, as to such encumbrancer, has never been foreclosed, and is still in existence and unpaid. And this is the ground upon which the plaintiff must stand in this case. Except as against the defendant and those claiming under him, he has got the title or estate, of the mortgagor and mortgagee, and he must prevail in this suit unless the mortgage has been paid and discharged. In *Benedict* v. *Gilman*, 4 Paige, 61, the chancellor says: "Under a statute foreclosure, if there are judgments subsequent to the mortgage, which remain a lien upon the property at the time of the sale under the statute, the purchaser takes the whole legal and equitable interest in the property, as against the mortgagor and all persons claiming under him, subject, however, to the equitable rights of the judgment creditors to redeem in the same manner as if such foreclosure had not taken place. The amount which such judgment creditors are to pay upon the redemption of the premises does not depend upon the sum bid at the sale, but is regulated by the amount actually due at the time of such sale, *unless it has been subsequently paid by the person who was equitably bound to pay the same.*" In *Brady* v. *Snyder et al.*, 14 Ill., 267, the court, in commenting upon and applying *Benedict* v. *Gilman, supra,* said: "So here, unless Thompson, the mortgagor, has paid the balance due upon the mortgage after the sale, the present complainants must pay it, as well as the purchase money, in order to redeem, except the costs of the foreclosure, for which they are not responsible, for they were not parties." And so we must say in

this case; unless Carter, the mortgagor, has paid the balance due upon the mortgage after the sale, the defendants must pay it as well as the purchase money, or else be foreclosed of their right to redeem. It therefore becomes the duty of the plaintiff in this suit to show, by proper evidence, the amount due on his mortgage, and which the defendants must redeem or be foreclosed of their equity of redemption, as the object of this suit is to cut off this right to redeem, or, in the event of redemption, "to distribute the money between the mortgagee and the purchaser, in equitable proportions, so as to reimburse the latter his purchase money, and pay the former the balance of his debt." (*Collins* v. *Riggs, supra.*)

The evidence disclosed by the record is to the effect, that at the time of the execution of the mortgage to the plaintiff, by Carter, the mortgagor, to secure the plaintiff from any loss upon his loan, and to pay the mortgage debt in the event the property should fail to sell for enough to discharge it, the mortgagor placed in his hands the Marquam notes referred to, as collateral security, and as a fund for such reimbursement, and for which the plaintiff gave him a receipt, or writing, in which it was stipulated, in addition, that in case the notes were paid before the mortgage became due, the plaintiff might, at his option, apply the proceeds thereof in the payment of his mortgage, or turn it over to the mortgagor. The effect of this stipulation was, to authorize the plaintiff to apply the Marquam notes in payment of the mortgage before it was due, a right which he would not have had without this stipulation. But the right to apply the proceeds of the notes after the sale and after the deficiency was ascertained, (which would have been a lien upon other property) can hardly be questioned.

The object of the notes, when paid, was to discharge any deficiency resulting from such sale—probably to prevent a resort to other property of the mortgagor—and the acceptance of them for this purpose made it the duty of the plain-. tiff, when the money came into his hands, to thus apply it, as the mortgagor had directed and to which he had assented, and turn over the surplus, if any, to the mortgagor. He was bound to do it, just as much as if, without this fund, Carter had tendered or paid him the balance due on his mortgage. And the evidence shows that he did thus apply it; that when the notes were paid he accepted the money in lieu of them, and appropriated it to his own use, investing some of the proceeds thereof in other real property, and entered upon the record satisfaction and discharge of the mortgage. It was in effect, and in fact, a voluntary payment by Carter of the mortgage debt, for in thus applying it to the payment of his mortgage, he did what Carter had authorized him to do. It does not stand upon the ground of payment by resort to other property of the mortgagor, by means of an execution issued to satisfy such deficiency, and thus enforce the payment of the mortgage debt. That receipts or marginal entries may be explained upon some state of facts, as decided by some of the authorities cited, is not questioned. But the difficulty here is, there is no need of explanation, for the successive acts which led to and terminated in the discharge of the mortgage, are only consistent with what preceded, and was intended by, their agreement. In our judgment, these follow as a necessary consequence, and, unquestionably were done with the design and intention of effecting just the result produced. Nor is the mortgagor, so far as this record discloses, making any objection to that result. The money, therefore, which the plaintiff received

in payment of the Marquam notes, and which was applied by him in the discharge of his mortgage, must be considered, upon the facts presented by this record, as a voluntary payment by the mortgagor for that purpose. Subsequent to the foreclosure and sale, the defendant, Gray, having issued execution upon his judgment, the property was again sold, and the defendant, DeLashmutt, became the purchaser, and thereafter recovered the same from the plaintiff in an action of ejectment. Just prior to this, the plaintiff had sold one of the blocks to Thompson for a larger sum than he paid for the whole property. This block must be restored or accounted for. The theory of his suit is inconsistent with the right to dispose of the property. But, as the defendants have confirmed the sale of the block to Thompson, it may be considered that the money shall stand for the property, and be applied as a payment on his mortgage. To this, we understand, the defendants assent. Applying this amount, in addition to the Marquam notes, and the mortgage is paid and discharged, and the plaintiff without any cause of suit. The decree of the court below, dismissing the bill, must be affirmed.