Submitted on briefs May 1, affirmed May 23, rehearing denied July 25, 1916.

# HIGGS v. McDUFFIE.

## (157 Pac. 794; 158 Pac. 953.)

### Mortgages—Foreclosure—Redemption.

1. Section 422, L. O. L., provides for personal judgment on mortgage foreclosure where a note or other personal obligation has been given, while Section 423 provides that any person having a lien subsequent to plaintiff, or who has given a note or other personal obligation for the payment of the debts secured by the mortgage, shall be made a party defendant. Plaintiff purchased land, giving a purchase money mortgage. Thereafter he resold the land, his grantees assuming payment of the purchase money mortgage, and delivering to plaintiff notes secured by a second mortgage; these, plaintiff negotiated. On foreclosure of the purchase money mortgage, plaintiff was made a party, as was the second mortgagee, and judgment of foreclosure was entered; personal judgment being rendered against plaintiff. Section 245 declares that redemption may be made, first by the judgment debtor or his successor in interest; second, by a creditor having a lien by judgment on any portion of the property. *Held* that, upon rendition of a personal judgment against him, plaintiff became a judgment debtor entitled to redeem.

### Mortgages—Foreclosure—Redemption.

2. Under Section 427, L. O. L., declaring that a decree of foreclosure shall have the effect to bar the equity of redemption, grantees of the mortgagor, who assumed payment of the mortgage but defaulted, have no right of redemption after foreclosure; personal judgment being rendered only against the mortgagor.

### Mortgages—Redemption—Estoppel.

3. Where mortgaged land was conveyed and the grantee assumed payment, the grantor is not estopped, the grantee having defaulted in payment of the mortgage, to assert his right of redemption; personal judgment against the mortgagor having been rendered on foreclosure.

### Mortgages—"Equity of Redemption."

4. In modern jurisprudence, the words "equity of redemption" designate the fee-simple estate of the mortgagor encumbered by the mortgage, and it is this that is conveyed by deed of the mortgagor, and by provision of Section 427, L. O. L., is barred by decree of foreclosure.

### Mortgages—Foreclosure—Right to Redeem.

5. Under Section 427, L. O. L., providing that a decree of foreclosure shall bar the equity of redemption, there is, after the foreclosure, no right to redeem because of the prior ownership of the equity of redemption.

[As to right to redeem as incident of mortgage, see note in Ann. Cas. 1912D, 959.]

Mortgages — Foreclosure—Redemption—Judgment Debtor — Successor in Interest.

6.   Where, in foreclosure after conveyance of the land by the mortgagor, there is personal judgment against him alone, he is the judgment debtor, and his grantee of the land is not his successor, within Sections 245, 427, L. O. L., giving right to redeem to the judgment debtor or his successor in interest; this referring to his successor in interest as judgment debtor.

From Morrow: GILBERT W. PHELPS, Judge.

In Banc.   Statement by MR. JUSTICE BURNETT.

This is an action by A. K. Higgs against George McDuffie, sheriff of Morrow County, Oregon, substituted as defendant in place of Marion Evans, former sheriff of Morrow County, Oregon.

On January 21, 1905, the plaintiff purchased 1,040 acres of land in Morrow County, which will be called "Lot A," and as part of the purchase price gave his note to the grantor for $6,000, securing the same by a mortgage on the premises. He had acquired a quarter-section of land from another source, which we will call "Lot B," and on April 12, 1906, conveyed both tracts to N. E. Winnard and H. P. Goodman. This deed was in the usual form of grant, bargain and sale, and contained this covenant:

"And the grantors above named, do covenant to and with the above-named grantees, their heirs and assigns, that the above granted premises are free from all incumbrances, except one certain mortgage securing the sum of $6,000.00, with interest, due C. M. Farnsworth, which is hereby assumed by the said grantees above named, and that they will and their heirs, executors, and administrators, shall warrant and forever defend the above granted premises, and every part and parcel thereof, against the lawful claims and demands of all persons whomsoever, except the said mortgage above mentioned."

The excepted mortgage was the one given by Higgs in the first instance to secure the purchase price. When the latter sold to Winnard and Goodman he took from them their purchase money mortgage securing their two notes to him for $2,000 and $8,000, respectively, covering all the lands included in his deed to them. On October 4, 1909, the $2,000 note having been paid, Higgs before its maturity indorsed the $8,000 note to F. H. Strong, together with the mortgage securing the same. By subsequent conveyances the title of Winnard and Goodman inured to James M. Phillips, trustee of the bankrupt estate of A. W. Lueders. On May 20, 1913, Mrs. Farnsworth brought suit to foreclose her $6,000 mortgage against Higgs and wife, making defendants of them, together with Strong, holder of the second mortgage, and Phillips, bankrupt trustee. In that suit Strong brought in the makers of the note which he held, and filed a cross-complaint against all the defendants demanding foreclosure of his junior mortgage. No other appearance was made by any defendant. On November 29, 1913, the court rendered a decree of foreclosure in which Mrs. Farnsworth recovered judgment against Higgs for $5,000, with interest from January 21, 1912, at 8 per cent per annum, for $400 attorneys' fees, and for costs and disbursements taxed at $44.90. In the same decree Strong was awarded judgment against Winnard and Goodman, as makers, and Higgs, as indorser, for $8,000, with interest from April 12, 1912, at 8 per cent per annum, for $600 attorneys' fees, and for costs and disbursements taxed at $42.90. The decree declared the mortgage held by Mrs. Farnsworth to be a first lien upon all of lot A and the one held by Strong to be second on lot A and first on lot B; directed that they both be foreclosed; that the two lots be sold

separately, the proceeds of lot A to be applied to the
payment of the Farnsworth mortgage, and the over-
plus, if any, together with those of the sale of lot B
devoted to the discharge of the Strong mortgage; and
that all the defendants named, except Strong, be barred
and foreclosed of all estate, claim, right, title, interest
or equity in the mortgaged premises, save only the
statutory right of redemption.   On December 9, 1913,
on the joint praecipe of Farnsworth and Strong, an
execution was issued to enforce the decree, and at the
sale T. J. Mahoney purchased lot A for the exact
amount due on the decree in favor of Mrs. Farnsworth,
and Strong bought lot B for $1,000.   The sale was
confirmed February 14, 1914.   On April 11, 1914, em-
powered by the order of the court in which the bank-
rupt proceeding was pending, Phillips, trustee, quit-
claimed all his estate, right, title, interest and equity
of redemption, and that of the estate of Lueders, bank-
rupt, to Mahoney, in and to a great part, but not all,
of the property included in the decree of foreclosure,
as disclosed by the record.   On the same date Strong
assigned, transferred and set over to Higgs the judg-
ment and decree made in favor of Strong in the fore-
closure suit, together with "all benefits and advantages
of the said judgment and decree including costs and
disbursements and any and all right which the said
Fred Hiram Strong has or may have to redeem any
of the property described in the pleadings in the above-
entitled cause from the sale thereof under proceedings
in said cause."   Under these circumstances, Higgs ap-
plied to the sheriff to redeem the property.   Mahoney
objecting, the sheriff refused to allow the redemption,
and this proceeding in *mandamus* was instituted to
compel the officer to permit redemption.   On final hear-

ing the writ was made peremptory, and the defendant sheriff appeals.

Submitted on briefs under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi). AFFIRMED!

For appellant there was a brief submitted over the names of *Mr. Clinton E. Woodson* and *Mr. J. Bowerman*.

For respondent there was a brief over the names of *Mr. Andrew G. Thompson, Messrs. Winter, Wilson & Johnson* and *Mr. Glenn Y. Wells*.

MR. JUSTICE BURNETT delivered the opinion of the court.

1. It is conceded that the proper amount of money was tendered for redemption purposes within the statutory time. The only question presented is the right of Higgs to compel redemption. We quote the following sections from Lord's Oregon Laws:

"A lien upon real or personal property, other than that of a judgment or decree, whether created by mortgage or otherwise, shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby by a suit. In such suit, in addition to the decree of foreclosure and sale, if it appear that a promissory note or other personal obligation for the payment of the debt has been given by the mortgagor or other lien debtor, or by any other person as principal or otherwise, the court shall also decree a recovery of the amount of such debt against such person or persons, as the case may be, as in the case of an ordinary decree for the recovery of money": Section 422.

"Any person having a lien subsequent to the plaintiff upon the same property or any part thereof, or who has given a promissory note or other personal

obligation for the payment of the debt, or any part thereof, secured by the mortgage or other lien which is the subject of the suit, shall be made a defendant in the suit, and any person having a prior lien may be made defendant at the option of the plaintiff, or by * * order of the court when deemed necessary'': Section 423.

''A decree of foreclosure shall have the effect to bar the equity of redemption, and property sold on execution issued upon a decree may be redeemed in like manner and with like effect as property sold on an execution issued on a judgment, and not otherwise'': Section 427.

''Property sold subject to redemption, as provided in the last section, or any part thereof separately sold, may be redeemed by the following persons or their successors in interest: 1. The judgment debtor or his successor in interest, in the whole or any part of the property separately sold; 2. A creditor having a lien by judgment, decree, or mortgage on any portion of the property, or any portion of any part thereof, separately sold, subsequent in time to that on which the property was sold. The persons mentioned in subdivision 2 of this section, after having redeemed the property, are to be termed redemptioners'': Section 245.

The right of redemption after decree, being statutory only, our sole task is to construe the Oregon legislation on the subject and apply it to the facts about which there is no substantial dispute.

Higgs claims a right to redeem in a dual character, first, as a judgment debtor, and, second, as a lien creditor; that is to say, as assignee of Strong. It is necessary to consider only his rights as a judgment debtor. He was made a defendant under that portion of Section 422, L. O. L., referring to a promissory note or personal obligation for the payment of the debt whether given by any person as principal, or other-

wise. In pursuance thereof the court foreclosed the mortgages, rendered a· personal decree against him for the amounts due, in the first case as the maker of the note there involved, and in the other as the indorser of the one originally given to himself. He was thus unquestionably a judgment debtor within the meaning of the statute. Although the mortgage he gave was for the purchase price of the land, he is none the less for the purposes of this case a judgment debtor under the decree, and the fact that no deficiency judgment could have been rendered against him in that proceeding does not alter the question. He comes clearly within the section of the Code allowing him to redeem.

2, 3. It is argued that he lost this right by having previously conveyed the premises to Winnard and Goodman. This is a misconception of the law, as well as the terms of the deed. The right to redeem had never yet arisen. It was not then in being. No such person as a judgment debtor or redemptioner had entered into the calculation. All he conveyed to Winnard and Goodman was the equity of redemption. The deed was made expressly subject to the mortgage encumbrance upon the land and the grantees therein covenanted to pay the same. In taking the quitclaim deed from the trustee in bankruptcy after the sale Mahoney took nothing, for the estate of the bankrupt being subject to the mortgage was barred under the terms of Section 427, L. O. L. Neither the trustee nor his bankrupt was personally liable for the debt, and therefore were not judgment debtors within the meaning of the statute. Neither the trustee nor any of his grantors were "successors in interest" of the "judgment debtor," because when they bought there was no such personage to succeed. They acquired an

estate containing within itself by the terms of the instrument creating it the elements which afterward worked out its dissolution. This was accomplished by the foreclosure, and all the interest they had was eliminated by that procedure under Section 427, L. O. L.

The right of redemption is a creature of the statute, and, as applied to the instant case, arises only after a sale upon a decree including a personal judgment against a defendant. When this right accrues, it may be transferred by the judgment debtor to anyone, and the latter thus becomes a successor in interest. Evidently it is to such a person purchasing from the judgment debtor after the sale that the redemption section refers in speaking of the ''judgment debtor or his successor in interest.'' The foreclosure extinguished all titles junior to the mortgages. None of the previous holders having such estates could redeem, as none of them is in the category of redemptioners. That litigation stripped the land of all claims subsequent to the mortgages and offered the naked legal title for sale so as to create a fund to which alone they could look for payment. The land was subject to redemption by the judgment debtor who came into being at the rendition of the decree, and not before. This individual, having no existence prior to the decree with its feature of personal judgment, is the only one entitled to redeem. He is not estopped by reason of the covenant in his deed because it was made subject to the mortgage. In other words, that encumbrance was a condition of the estate conveyed. It was in effect a defeasance clause by means of which the title of the grantees might be defeated. They foresaw the possible result which might arise from foreclosure, to the effect that their holding would be extinguished,

and a new statutory right of redemption would arise and be vested in him of whom they had bought and who would become a judgment debtor entitled in that character to rescue the land from the effect of the sale. It is not a case of a covenanting grantor trying to enforce an after-acquired title in face of his deed. It is an instance where he is entitled to enjoy the results which the law deduces from the very instrument under which his grantees and their successors in interest would resist his claim. They cannot complain, because they have not kept the faith of their covenant to assume and pay the mortgage. They cannot escape the consequences which the statute visits upon them, to wit, elimination of their estate by foreclosure with the coincident creation of the right of redemption to be exercised by the judgment debtor. All these sequelae flow from the deed under which the grantees of Higgs combat his right to redeem. They were to be expected by them and cannot now be avoided. To hold otherwise would be to allow them and their successor in interest, the purchaser at the sale, to refuse to pay the mortgage, and at the same time to reap an advantage over the man primarily liable for the same, all by virtue of their having broken covenant with him. Higgs never has lost his character as a judgment debtor, and there was nothing in his deed preventing him from assuming it when it came into being. Indeed, it is the natural consequence of the very terms of the deed, unless the grantees had observed its conditions.

The judgment is affirmed. AFFIRMED.

MR. JUSTICE EAKIN did not sit.

Denied July 25, 1916.

## ON PETITION FOR REHEARING.

(158 Pac. 953.)

*Mr. Clinton E. Woodson* and *Mr. J. Bowerman,* for the petition.

*Mr. Andrew G. Thompson, Messrs. Winter, Wilson & Johnson,* and *Mr. Glenn Y. Wells, contra.*

In Banc. MR. JUSTICE BURNETT delivered the opinion of the court.

4-6. The principal contentions of the defendant in his petition for rehearing are that the court erred in the former opinion in holding that the plaintiff conveyed to Winnard and Goodman only the equity of redemption in the land in question, and that he was properly a judgment debtor, entitled to redeem the premises from the execution sale under the decree. Apparently counsel impute to the phrase ''equity of redemption'' the common-law signification, but this is erroneous. It is true, indeed, that under our Code, and decisions in pursuance thereof, the mortgagee takes no title by virtue of the mortgage it being only a lien upon the premises. Mr. Chief Justice SEEVERS in *Mayer* v. *Farmers' Bank,* 44 Iowa, 212, 216, says:

''The equity of redemption must not be confounded with a right of redemption. A mortgagor has an equity of redemption until the sale, and not afterward. * * After sale, he has a right of redemption if the statute gives it.''

In *Sellwood* v. *Gray,* 11 Or. 534 (5 Pac. 196), Mr. Justice LORD states the following:

"In this state a mortgage does not operate, as at common law, to vest in the mortgagee an estate upon condition, the breach of which works a forfeiture of his estate and renders it absolute. It is, in fact, what the parties intended, and as equity treated it, a mere security for the repayment of the debt or obligation, and serves simply to create a lien or encumbrance upon the property. The title, both before and after condition broken, remains in the mortgagor until foreclosure and judicial sale. The mortgage works no change of ownership in the property. It is still the property of the mortgagor, in law and in equity, is liable for his debts, may be sold under execution, conveyed or devised, is subject to dower, or may be again mortgaged, as any other estate in land. Nor do any of the qualities or incidents of an estate in land attach in the mortgagee. He has but a lien upon the land as a security for repayment, and which cannot operate to affect the possession of the mortgagor without his consent, or to transfer his estate in the land, except after default, and by force of a judicial sale under a decree of foreclosure. But, before such proceedings are had, payment of the debt by the mortgagor will extinguish the lien and free the estate from the mortgage. Although this right of the mortgagor to intervene, after default and before judicial sentence, and discharge the mortgage, is usually termed his 'equity of redemption,' it is not so in fact, or in equity, in the sense which recognizes the legal estate in the mortgagee, defeasible before and absolute after default, and which, on the condition of paying his debt, allowed him to redeem a forfeited estate and demand a reconveyance. * * His equity of redemption is the right to redeem from the mortgage—to pay off the mortgage debt—until this right is barred by a decree of foreclosure; but until this right is barred, his estate in law or in equity, is just the same after, as it was before, default. It is a right, though, of which the law takes no cognizance, and is enforceable only in equity, and has nothing to do with our statute of redemptions."

The words "equity of redemption" constitute a terminology coming down to us from common-law times, when a mortgage actually passed the title to the mortgagee, subject to redemption and reconveyance to the mortgagor on his paying the debt. In modern jurisprudence the same words are used to designate the fee-simple estate of the mortgagor encumbered by the lien of the mortgage, there being no title conveyed to the mortgagee by that instrument: *Kortright* v. *Cady,* 21 N. Y. 343 (78 Am. Dec. 145); *Navassa Guano Co.* v. *Richardson,* 26 S. C. 401 (2 S. E. 307); 3 Words and Phrases, p. 2447; 2 Words and Phrases (Second Series), p. 310. The common-law term is now applied to an estate materially different from that originally so designated. It was this modern estate which Higgs, as owner thereof, conveyed to Winnard and Goodman, and which by mesne conveyances ultimately vested in Phillips, as trustee of the bankrupt, Lueders. Higgs could not transfer any greater or more perfect title than this, for he had it not to sell. It was also the estate which the foreclosure extinguished, for Section 427, L. O. L., explicitly says "a decree of foreclosure shall have the effect to bar the equity of redemption." Unless he becomes a judgment debtor under the decree, the one who hitherto held the equity of redemption is cut off from all right to redeem the land. Prior to the decree his right to redeem depended upon his mortgage contract, but that was swept out of existence by the decree of foreclosure. If it could be explained that the bankrupt estate of Lueders owed anything on the decree or judgment, then its transfer to Mahoney might enable him to prevent redemption by another. But neither Lueders nor his estate was liable for any part of the money due on the decree. Not a dollar of it

could be demanded from that source. The only effect the decree of foreclosure had in that direction was to destroy all the title inuring to Lueders because he took subject to the mortgage. His contract right to redeem, or, in other words, his equity of redemption, named in Section 427, L. O. L., all he took as successor of Higgs in his character as owner or mortgagor, was gone beyond recall. After the decree it could not be made the basis of any further operation affecting the title. When Higgs conveyed, he was not a judgment debtor, and could not transfer any right of such a character, for there was nothing of the kind in existence to sell. When, and not until, by the decree it had been determined that Higgs was a judgment debtor, a statutory privilege appertaining to one thus declared to be personally liable for the debt came into being for the first time. It related exclusively to the particular lands in question, and only then or afterward could anyone become the successor in interest of the judgment debtor within the true meaning of Section 245, L. O. L., read in connection with Section 427, L. O. L., both being parts of the same act.

After decree, with all propriety, the judgment debtor could have assigned to Jones the right to redeem tract A, reserving to himself the redemption of tract B. Jones would then have been the successor in interest of the judgment debtor in a part of the property separately sold, within the meaning of Section 245, L. O. L. In short, there cannot be a successor to a judgment debtor until there is a judgment debtor to succeed. This statutory right of redemption is not referable to, nor does it depend upon, any conveyance of the pre-existing equity of redemption, for the latter, as Mr. Justice LORD said in *Sellwood* v. *Gray,* 11 Or. 534 (5 Pac. 196), has nothing to do with our statute of re-

demptions.   The distinction between the equity of re-
demption, properly so called, and the statutory right
of redemption, is clearly pointed out by Mr. Justice
SOMERVILLE in *Powers* v. *Andrews,* 84 Ala. 289, 291
(4 South. 263, 264), thus:

"It has often been said by this court that this right
of redemption under the statute is purely the creature
of legislation, and has no existence without it.   It is
essentially different from the equity of redemption,
recognized by the common law.   That right is prop-
erty, capable of sale by transfer, or under execution,
or decree of a chancery court.   It can only be exercised
before a foreclosure of the mortgage, under a decree of
a court of equity, or before a sale, under a power in
the mortgage.   It cannot be exercised after a valid
foreclosure, either under a power of sale, or under a
decree, unless in the case of voidable sales, where the
mortgagee has acted as both seller and purchaser
without the consent of the mortgagor, so as to justify
the court in setting aside the sale for constructive
fraud. * * The statutory right of redemption, on the
contrary, comes into existence only after the equity
of redemption proper has been cut off by sale or fore-
closure.   Until then, it would seem, it cannot spring
into life.   And we have uniformly decided that this
privilege is neither property, nor the right of prop-
erty, that it is not subject to levy or sale as such under
execution, and that it is a right or privilege personal
to the debtor."

For illustration, suppose Brown, without giving any
personal obligation on his part, mortgages his land
to secure the promissory note of Smith.   In the event
of foreclosure the mortgagor, Brown, not having be-
come a judgment debtor, because he did not owe any-
thing, would not have the statutory right of redemp-
tion.   His contract right of redemption or his equity
of redemption, to use the phrase of the Code, would
be barred by the decree.   The judgment debtor, Smith,

would have the privilege of redeeming; but it would avail him nothing, because he never had any estate to which he could be restored.

Contending that, even after foreclosure, title to the premises sold at foreclosure remains in the mortgagor or his successor in interest until execution and delivery of sheriff's deed, counsel has cited *Dray* v. *Dray*, 21 Or. 59 (27 Pac. 223), and *Kaston* v. *Story*, 47 Or. 150 (80 Pac. 217, 114 Am. St. Rep. 912). The first of these cases treated of an execution sale on a judgment at law, and had no reference to foreclosure decrees. It further makes a very clear distinction between equity of redemption and the right of a judgment debtor to redeem after sale, saying that the latter is purely a legal right. The court did not have under consideration the statute on foreclosures, which says the decree shall have the effect to bar the equity of redemption. In its facts, *Kaston* v. *Story* is not hostile to the theory that only one in debt at the time upon the decree is qualified to exercise or transfer the statutory right of redemption, for there, as disclosed by the record in this court, it was the judgment debtor who conveyed, and that, too, subsequent to the decree, when he had nothing to sell except that legal right. In very truth, Kaston, the plaintiff there, succeeded only to this statutory privilege of redeeming, not from the mortgage, but from the sale: *Flanders* v. *Aumack*, 32 Or. 19, 30 (51 Pac. 447, 67 Am. St. Rep. 504, note). He had nothing to do with the equity of redemption, for that had been barred by the decree.

*Commonwealth etc. Assn.* v. *Parker*, 84 Ala. 298 (4 South. 268), cited by the defendant, holds that the conveyance of the equity of redemption prior to foreclosure waives the subsequent statutory right of redemption, because redemption itself implies a present

ownership in property. This case is not in point here, even on that theory, for Higgs sold his equity of redemption subject to the mortgage which his grantees assumed, but did not pay. This of itself would be an exception to what would otherwise be a waiver under the Alabama case, and he would be entitled to all the privileges conferred by statute and attendant upon the personal decree against him in the foreclosure suit. Moreover, that case, as well as *Powers* v. *Andrews,* 84 Ala. 289 (4 South. 263), is distinguishable from the one in hand, for our statute recognizes the successor in interest of the judgment debtor as a proper redemptioner, thus making provision for an assignment of the right which the Alabama statute did not. This is taught by *Rosenberg* v. *Croisan,* 18 Or. 470 (23 Pac. 847). *Miller* v. *Ayres,* 59 Iowa, 424 (13 N. W. 436), only teaches that the right of redemption under consideration is purely a creation of statute, and that a surety, not being within its terms, cannot exercise that privilege.

It is contended that our former decision overruled *Willis* v. *Miller,* 23 Or. 352 (31 Pac. 827), but there a redemption in the name of the judgment debtor was recognized and enforced. The principal question there involved was the effect of the redemption. The plaintiff contended that such a redemption from foreclosure sale returned the land to the redemptioner discharged of all claims on account of the mortgage debt, while the defendant maintained that it was yet liable for the unpaid deficiency remaining due on the decree. Justices BEAN and MOORE upheld the plaintiff's contention, while Mr. Chief Justice LORD approved the defendant's position. The fallacy of what was said in *Lauriat* v. *Stratton* (C. C.), 11 Fed. 107, about who is a judgment debtor, and followed in *Willis* v. *Miller,*

*arguendo,* lies in the assumption that he who pur-
chased the equity of redemption prior to the entry of
the decree has some right to the land after foreclos-
ure, and hence sustains the same relation to the de-
cree as the successor in interest of a judgment debtor
in a judgment at law. This leaves out of the calcula-
tion the effect given to the decree by the statute,
namely, barring the equity of redemption, while a judg-
ment at law does not bar the title but only operates
as a lien upon it. In equity the previous title is ex-
tinguished by the decree, while at law the title does
not pass until delivery of the sheriff's deed.

The doctrine of *Williams* v. *Wilson,* 42 Or. 299 (70
Pac. 1031, 95 Am. St. Rep. 745), is directly opposed
to the theory of the defendant that one who once held
the equity of redemption has on that account some
right to operate as a redemptioner after the decree
of foreclosure. Following the statute, the substance
of that case is that the decree ends all title of the
mortgagor and those claiming subject to the mortgage,
and thenceforward whatever rights they exercise must
be by virtue of the decree acting upon the fund created
by the sale. If the holder of the equity of redemp-
tion had any power over the property after decree, the
functions of the court rendering the same would be
useless and of no effect; but the true doctrine is that
upon foreclosure the court seizes upon the title affected
by the mortgage, divests it of that lien, and also of all
subsequent claims, as well as the equity of redemption
named in the statute, and offers the pledged estate,
thus shorn of encumbrances, for sale for the purpose
of creating a fund to satisfy the various demands
against it. The decree puts a quietus upon the equity
of redemption and all subsequent liens. Claimants,
including the erstwhile holder of the equity of redemp-

tion, must then and afterward look to the fund and not to the land for satisfaction.

In the case of *Yoakum* v. *Bower,* 51 Cal. 539, it was decided that a defendant in execution can redeem from an execution sale, notwithstanding he has conveyed to another the property sold under execution. This was under a statute almost identical with ours. Again, in *Harvey* v. *Spaulding,* 16 Iowa, 397 (85 Am. Dec. 526), the Code provided that the judgment debtor might redeem at any time within one year from the date of sale, and it was held that he could do so, although he had previously sold the land to another party. Also, in *Livingston* v. *Arnoux,* 56 N. Y. 507, construing an enactment substantially like our own, the court says:

"The right of the judgment debtor whose title has been sold on execution to redeem from the sale does not depend upon the condition of his title at the time of the sale or redemption. The language of the statute is direct and unambiguous. The right is given to the person against whom the execution issued, and whose title was sold thereon. It follows the person, and not the land, and continues for the period allowed by law, although the debtor meanwhile may have parted with his title. The right secured to the judgment debtor to redeem, although he has conveyed the land, is often an important and valuable one. Where he has conveyed with warranty, he is enabled thereby to protect the title of his grantee, and secure himself against liability; and if he has received a full consideration for the land, it is just and equitable that he should discharge it, by redemption, from the lien acquired by the purchaser on the sale, although he may not have bound himself by any covenant to do so. Nor is there any incongruity in holding that the right of redemption coexists in the judgment debtor and his grantee. Where the former has conveyed the land, his redemption will inure to the benefit of the holder of the legal title, and the owner has the means of pro-

tecting his own interest, if the judgment debtor is either unable or unwilling to make the redemption."

It is plain that Higgs was a judgment debtor under the decree, and as such he had a right to redeem, irrespective of the condition of the title when he made the offer. We adhere to the former opinion.

AFFIRMED. REHEARING DENIED.

MR. JUSTICE EAKIN took no part in the consideration of this case.

MR. JUSTICE BEAN delivered the following specially concurring opinion:

I concur in the result of the learned opinion of Mr. Justice BURNETT, but am unable to accede to all the rulings given as a reason for reaching the conclusion:

(1) To the effect, as stated, that "when Higgs conveyed, he was not a judgment debtor, and could not transfer any right of such a character, for there was nothing of the kind in existence to sell." In a strong opinion in the case of *Lauriat* v. *Stratton* (C. C.), 11 Fed. 107, at page 114 thereof, in considering a case under our redemption statute, Judge DEADY said:

"At the date of the mortgages to Swegle and Cooke, Mary Hall was the owner of this property, and, for the purpose of redemption, is to be deemed the judgment debtor in the decree providing for the enforcement of the liens of said mortgages. But at the date of this decree Hessie J. Shane had become the successor in interest of Mary R. Hall, and before the redemption by Stratton, Clarno and Liebe had succeeded to her interest, and sustained the same relation to this decree as the successor in interest of a judgment debtor in a judgment at law."

The same enunciation was made by Mr. Chief Justice LORD in *Willis* v. *Miller*, 23 Or. 352 (21 Pac. 827). The opinion of Judge DEADY, I think, has stood the test of

time. A contrary ruling in my opinion is unnecessary to a determination of the present case. In *Jacobson* v. *Lassas,* 49 Or. 470, 473 (90 Pac. 904, 905), Jacobson, the successor in interest of the mortgagor taking before foreclosure, was held by this court, in an opinion by Mr. Justice MOORE, to be a successor in interest entitled to redeem under the statute, the court saying:

"The redemption of the real property by the plaintiff herein abrogated the sale of the premises, and restored to him, as successor in interest of Lettie McCarty, the estate in the land as if the first mortgage thereon had never been given."

(2) In the opinion of Mr. Justice BURNETT it is stated:

"In equity the previous title is extinguished by the decree, while at law the title does not pass until the delivery of the sheriff's deed."

In the case of *Kaston* v. *Storey,* 47 Or. 150 (80 Pac. 217, 114 Am. St. Rep. 912), in discussing the effect of a sale under a decree of foreclosure, it is said by former Mr. Justice BEAN:

"A mortgage of real property in this state does not pass the title, but merely creates a lien: *Anderson* v. *Baxter,* 4 Or. 105; *Sellwood* v. *Gray,* 11 Or. 534 (5 Pac. 196). The legal title remains in the mortgagor or his successor in interest until a sale under a foreclosure decree has ripened into a title by the execution and delivery to the purchaser of a sheriff's deed in due course of law."

In *Dray* v. *Dray,* 21 Or. 59 (27 Pac. 223), it is stated:

"After the sale of real property upon execution the legal title still remains in the judgment debtor until the sheriff's deed is executed."

Referring to the quotation in the opinion of Mr. Justice BURNETT from *Livingston* v. *Arnoux,* 56 N. Y. 507,

which it seems to me is applicable to the case in hand, we find:

"Nor is there any incongruity in holding that the right of redemption coexists in the judgment debtor and his grantee. Where the former has conveyed the land, his redemption will inure to the benefit of the holder of the legal title, and the owner has the means of protecting his own interest, if the judgment debtor is either unable or unwilling to make the redemption."

In the case at bar Higgs asks to redeem as the first mortgage debtor, and as such under the statute has the right to do so, provided he has a sufficient interest in the mortgaged premises. This interest he has by virtue of being an indorser or surety upon the note transferred to Strong, and in the foreclosure suit he is a judgment debtor as to the second mortgage. By the decree he is not precluded from redeeming from the sale. It is thus laid down in 2 Wiltsie on Mortgage Foreclosure (3 ed.), Section 1124:

"On the well-recognized principle that a surety has the right to avail himself of the securities held by the creditor, after he has satisfied the debt, a surety for the mortgage debt, even though he has no interest in or lien upon the mortgaged estate, has a right to redeem from the mortgage lien and be subrogated to the rights of the mortgagee."

The amount received at the foreclosure sale does not change the right of redemption. If the property had brought $4,000, and Higgs was still liable for the difference of about $2,000 on the judgment upon the first mortgage note, his right to redeem as a judgment debtor would seem clear. In short, as well stated by Mr. Justice BURNETT, in order for Winnard and Goodman, or their grantee or successor in interest, in whose shoes Mahoney now stands, to have the right to redeem, or the right to prevent the judgment debtor or

original mortgagor from redeeming, it is incumbent upon them to pay the judgment for the second mortgage debt.   Our statute appears to contemplate that more than one party may have the right to redeem. In the case at bar the superior right is in Higgs.   I am not prepared to concede that the grantee of a mortgagor, taking the conveyance before suit to foreclose and paying therefor, has not the right to redeem under the statute after a sale upon a decree of foreclosure.