Argued January 22, affirmed March 2, 1920.

## CHANDLER INV. CO. *v.* MATLOCK INV. CO.*

(187 Pac. 1105.)

**Execution—False Representations by Purchaser or Judgment Creditor to Prevent Competition Avoids Sale.**

1. As a general rule, false representations made by a purchaser or by a judgment creditor to prevent competition will render a sale void, and if the representation is untrue, it is usually immaterial whether the person making the representation did or did not know of its falsity.

---

*For authorities passing on the question as to chilling of bids at judicial sale, see note in 42 L. R. A. (N. S.) 1198.    REPORTER

Execution—Person Having Valid Interest in Property to be Sold may Announce His Interest.

2. If a party has an interest in or a valid claim against property to be sold under execution, he may announce such interest or claim without invalidating sale.

Mortgages—Single Money Decree Could not be Given in Proceedings to Foreclose First and Second Mortgages in Single Proceeding.

3. Conceding that first mortgage given by four persons could be foreclosed in same proceeding with second mortgages given by two of the four, a single money decree could not be given.

Mortgages—Bidding at Sale not Chilled by Statement of One Interested That Bidders of Property of One Defendant Would Take Subject to Second Mortgage.

4. Where M. and L. gave to an investment company a first mortgage on property of each, and thereafter M. gave to company a second mortgage on his property and a bank bought all the interest of L. with knowledge of second mortgage, it was not a valid objection, on ground of chilling bidding, to confirmation of sale on foreclosure of first mortgage that representative of company stated that bidders of property of M. would take "subject" to second mortgage, since, notwithstanding Section 423, L. O. L., failure to make junior encumbrancer a party does not invalidate decree, though foreclosure of first lien does not bar equity of redemption.

From Coos: GEORGE F. SKIPWORTH, Judge.

Department 1.

This is an appeal from an order confirming the sale of real property made pursuant to a decree rendered in a suit to foreclose a mortgage. The Chandler Investment Company and the Flanagan & Bennett Bank are corporations. On April 20, 1915, J. Albert Matson and his wife, and Herbert Lockhart and his wife made and delivered to the Chandler Investment Company their joint and several promissory note for $22,711.50, payable on or before two years after date to the order of the Chandler Investment Company with interest. Contemporaneously with the execution and delivery of the note Herbert Lockhart and wife deeded to the Chandler Investment Company certain parcels of land which they owned, and at the same time J. Albert Matson and wife conveyed and caused to be

conveyed to the Chandler Investment Company certain parcels of land which they owned. These conveyances, although in form deeds, were in fact mortgages; for under date of April 20, 1915, Matson and wife as first parties, Lockhart and wife as second parties, and the Chandler Investment Company as the third party, entered into an agreement of trust in which it is expressly stated that "the third party by said conveyances holds the titles to said properties only as security in the nature of mortgages, for the payment" of the note and "for the repayment of expenses incurred in the course of holding said titles." This agreement of trust embraces 16 parcels of land, and the parcels are numbered consecutively from 1 to 16, inclusive. When the note was delivered Lockhart and wife owned parcels numbered from 1 to 9 inclusive, and, as we understand the record, the Matsons owned parcels numbered 10 to 16, inclusive. Parcel 2 was subsequently released from the mortgage and hence is eliminated from further consideration.

On July 28, 1916, Matson and wife borrowed $6,500 from the Chandler Investment Company, and to evidence that indebtedness they gave to the lender their note for that amount payable on or before two years after date with interest, and for the purpose of securing this note the Matsons as the first parties and the Chandler Investment Company as the second party entered into a "supplemental agreement of trust," in which it is agreed that the Chandler Investment Company shall hold the title to the parcels of land, numbered 10 to 16, inclusive, which had previously, on April 20, 1915, been deeded and caused to be deeded by the Matsons to the Chandler Investment Company, and "that this transaction is intended by the parties to be in the nature of a second mortgage on said prop-

erty from the first parties hereto, the first mortgage being evidenced by the above described agreement of trust of April 20, 1915." The note for $6,500, was, by payments, afterwards reduced to $3,500.

At some time after July 28, 1916, the Flanagan & Bennett Bank purchased from the Lockharts parcels 1 to 9, inclusive, less parcel 2, subject of course to the mortgage dated April 20, 1915. In other words, the bank acquired all the interest which the Lockharts had in the mortgaged property.

The promissory note made on April 20, 1915, not having been paid, the Chandler Investment Company brought suit to foreclose the note and mortgage. The Matlock Investment Company, a corporation, J. Albert Matson and his wife, Herbert Lockhart and his wife, the Flanagan & Bennett Bank, and certain other persons were named as parties defendant in the suit. Neither the note nor the supplemental trust agreement of July 28, 1916, is referred to in any pleading in the suit, nor is either paper mentioned in the decree. The Flanagan & Bennett Bank answered, and afterwards the Chandler Investment Company and the Flanagan & Bennett Bank entered into a written stipulation by which it was agreed that, "upon the sale of the mortgaged property on execution to enforce the decree which may be entered into in this cause in favor of plaintiff," the mortgaged parcels shall be sold in the following order: 10, 11, 12, 13, 14, 15, 16 and 1, 3, 4, 5, 6, 7, 8, 9. It was further stipulated that the bank "may redeem from said sale of any of the lands in parcels 1, 3, 4, 5, 6, 7, 8 and 9 at any time within one year from the date on which the sale thereof is confirmed by the court, by paying the amount for which the same is sold at said sale," with interest and taxes, less the revenues received from the lands.

The suit in foreclosure terminated on October 18, 1918, in a decree adjudging that the Chandler Investment Company recover from Matson and wife and Lockhart and wife, the makers of the note of April 20, 1915, the sum of $25,233.44, the amount due on the note, and the further sum of $4,357.76, on account of moneys paid by the plaintiff for taxes, special assessments, insurance, and the like, together with costs and disbursements, amounting in the aggregate to $29,949.64.

The decree also provided for a foreclosure of the mortgage, directed that the parcels of mortgaged property be sold in the order agreed upon in the written stipulation, and gave the bank a right to redeem on the terms fixed by the stipulation.

Upon the application of plaintiff a writ of execution was issued. Notice was given that the mortgaged property would be sold on November 30, 1918, and that the fifteen parcels of land would be disposed of in the order fixed by the decree. The sale was held in conformity with the notice. Among those who attended the sale were T. T. Bennett, an attorney of record for the Flanagan & Bennett Bank, and L. A. Liljeqvist, the attorney of record for the plaintiff. At some time after the sheriff had begun proceedings to sell the property, but before any part of any parcel was struck off to the successful bidder, T. T. Bennett in the presence of those who were attending the sale, objected to the sale on the grounds, among others, that the execution was defective and that the notice was defective; and according to the testimony of one witness "Mr. Bennett turned to the bidders and stated they would not get a good title." After T. T. Bennett concluded this statement, L. A. Liljeqvist, as the representative of the Chandler Investment Company, made the following statement to the persons attending the sale:

"The Chandler Investment Company has a mortgage on parcels 10, 11, 12, 13, 14, 15 and 16 due and unpaid, claimed as mortgage lien on this property, in the sum of $3,500 and interest, on parcels 10 to 16 inclusive, as shown by the supplemental agreement of trust on file in the office of the Coos County Clerk, and the purchaser at the sale of the property of parcels 10 to 16, inclusive will take subject to the mortgage of $3,500 and interest."

T. T. Bennett then made an "objection for the reason that Mr. Liljeqvist's statement is made for the purpose of discouraging people at the sale." Thereupon L. A. Liljeqvist stated that—

"It is not for the purpose of discouraging people at this sale, but for the purpose of advising the bidders."

The sheriff proceeded with the sale. The Bennett Trust Company, acting through T. T. Bennett, purchased part of the property for which the company paid $479.25 in cash; H. A. Wells purchased a portion of the premises for $847.50 in cash; and the remainder was bid in by the Chandler Investment Company for the aggregate sum of $28,622.89, which was credited on the execution and decree. The total amount made on the sale was $29,949.64, or the exact amount of the money decree against the Matsons and Lockharts.

After the sheriff made and filed his return on the writ of execution, the Flanagan & Bennett Bank filed its objections to a confirmation of the sales made by the sheriff under the writ. Among the objections made by the bank was the claim that the statement made by L. A. Liljeqvist, in the presence of the persons attending the sale, about the Chandler Investment Company having a mortgage for $3,500 on parcels 10 to 16, inclusive, chilled the bidding. The trial court overruled

the objections and confirmed all the sales.    The bank appealed from the order of confirmation.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Teal, Minor & Winfree* and *Messrs. Bennett & Swanton,* with an oral argument by *Mr. Wirt Minor.*

For respondent there was a brief and an oral argument by *Mr. L. A. Liljeqvist.*

For defendants there was a brief submitted over the name of *Mr. J. T. Brand.*

HARRIS, J.—Although the note of April 20, 1915, represented a joint and several indebtedness from the four makers to the payee, yet as between the makers themselves, the bank says, the sum of $6,211.50, or 27.34 per cent of the face of the note, was the debt of the Matsons, while the sum of $16,500, or 72.66 per cent of the face of the note was the debt of the Lockharts. If as between the makers of the note the Matsons owed 27.34 per cent and the Lockharts owed 72.66 per cent of the aggregate indebtedness on the note, then the Matsons owed $8,188.23 and the Lockharts $21,761.41 of the judgment for $29,949.64 secured by the Chandler Investment Company against them.    The bank argues that as between the makers of the note parcels 10 to 16, inclusive, or the Matson lands, were chargeable with $8,188.23, while parcels 1 and 3 to 9, inclusive, the lands formerly owned by the Lockharts but now owned by the bank, are chargeable with $21,761.41. At the sale the Matson lands, parcels 10 to 16, inclusive, brought the aggregate sum of $6,090.50, or $2,097.73 less than the Matsons' share of the indebtedness, while

the Lockhart parcels were sold for \$23,859.14, or
\$2,097.73 more than the Lockharts' share of the in-
debtedness. The bank contends that the statement
made by L. A. Liljeqvist at the sale chilled competi-
tion, with the result that the Lockhart lands were com-
pelled to carry a portion of the burden which should
have been carried by the Matson lands.. In substance,
the argument of the bank is that as between the makers
of the note the Matson lands were charged with the
obligations of a principal as to the Matsons' share of
the indebtedness and with the duties of a surety as to
the Lockharts' share of the indebtedness. Although
each of the four makers of the note was primarily liable
to the payee for the whole debt, and none of the makers
occupied the position of a surety as between them and
the payee, still it may be assumed for the purposes of
the discussion that, as between the makers themselves,
the Matsons owed only 27.34 per cent of the total in-
debtedness.

1, 2. As a general rule, false representations made
by a purchaser or by a judgment creditor to prevent
competition will render a sale void: *Bethel* v. *Sharp,* 25
Ill. 173 (76 Am. Dec. 790). If the representation is
untrue, it is usually immaterial whether the person
making the representation did or did not know of its
falsity (*Reed* v. *Diven,* 7 Ind. 189), although illustra-
tions are not lacking of instances where the sale will
not be set aside unless it is shown that the representa-
tion deterred some person or persons from bidding:
*Conley* v. *Redwine,* 109 Ga. 640 (35 S. E. 92, 77 Am. St.
Rep. 398). However, if a party has an interest in or
a valid claim against property to be sold under execu-
tion, he may announce such interest or claim without
invalidating the sale: 17 Cyc. 1257; *Nodine* v. *Rich-*

95 Or.—26

*mond,* 48 Or. 527, 546 (87 Pac. 775); *Leake* v. *Anderson,* 43 S. C. 448 (21 S. E. 438). See note in 20 L. R. A. 545.

The bank stipulated that it became the owner of the Lockhart parcels after the execution of the note, deeds, and trust agreement dated April 20, 1915. It is not contended by the bank that it purchased without knowledge of the first mortgage, nor does the bank claim that it acquired the interest of the Lockharts without notice of the second mortgage. Whatever interest the Lockharts conveyed to the bank was acquired by the latter subject to both mortgages. Prior to the sale under execution T. T. Bennett, who represented the bank, was made aware of the fact that the Chandler Investment Company claimed that its second mortgage on the Matson parcels was still a lien, although it was junior to the mortgage of April 20, 1915; and, indeed, he expected that L. A. Liljeqvist would make public announcement of that fact at the time and place fixed for the sale under execution, for the record shows that, at the request of Mr. Bennett, Fred Hollister attended this sale for the sole purpose of listening "very attentively to the statements made by Mr. Liljeqvist" and thus be enabled to "testify in the future to what he said." According to the testimony of Fred Hollister there were "probably half a dozen" persons present at the sale. The officer who conducted the sale says that he remembers the names of all the persons "who came and went and stopped and listened to the proceedings that took place" during the sale; and according to his testimony there were present during the sale the officer, a stenographer employed in the sheriff's office, T. T. Bennett, L. A. Liljeqvist, "Henry Wells and Mr. Chandler." Besides Fred Hollister, who was present only a part of the time, Mr. Brand "stayed a

while, but not all of the way through.'' Laying aside for the moment the statement made by Mr. Liljeqvist, there is no evidence tending to show that any person was deterred from bidding, unless it can be said that Mr. Bennett was such a one. Mr. Bennett testified thus:

''While the Flanagan & Bennett Bank does not believe that Mr. Liljeqvist's claim of $3,500 is a legitimate one, we do believe that we would have a fight or a lawsuit on our hands if we bought in the Matson property, and to that extent it deterred us from bidding at that sale; deterred me from bidding in the Matson property. * * My object at that sale at that time was to force Mr. Chandler to bid as much as possible for the Matson property; I did not want the property, but I wanted them to bid as high as I could induce them to bid, and I bid against them on every piece of property of Mr. Matsons that was sold, and I took into consideration, and I thought and believed that if I purchased the Matson property I would have to fight Mr. Chandler and Mr. Liljeqvist in another lawsuit in order to set aside this illegal claim of Mr. Chandler's claim of $3,500 and interest, which they claim is ahead of the sale and which I claim was not. * * I did bid, I am very sure, on every piece of property of Mr. Matsons that was offered; I bid something.''

In brief, the purpose of the witness was, not to acquire any of the Matson property, but to induce the Chandler Investment Company to bid as high as it could be induced to bid. Mr. Bennett, who represented the Bennett Trust Company as well as the bank, bid on every piece of Matson property; and it may be noted in passing that some of his inducing bids were higher than the Chandler Investment Company was apparently willing to offer, for portions of the Matson lands were struck off to the Bennett Trust Company, including parts of parcel 10, a part of parcel 13, parts

of parcel 14, and the whole of parcel 15. Indeed, the only lands purchased by the Bennett Trust Company were the Matson lands; this company did not buy any of the Lockhart property. H. A. Wells purchased the whole of parcel 7, a portion of parcel 3, and a part of parcel 13. The remainder of the mortgaged property was struck off to the Chandler Investment Company. It is not alleged that any part of any parcel sold for an inadequate price. True it is that the appellant suggests in its brief that the total price realized at the sale was considerably less than the sum of the release prices fixed on the several parcels in the agreement of trust; but it is also true that the plaintiff suggests that the difference merely represents the difference between the boom times of 1915 in that section and the normal conditions now prevailing there. At any rate it is not alleged by the bank in its objections to confirmation that any portion of the Matson lands was sold for an inadequate price. J. Albert Matson testified not only that he "did not make any objections to the sale" but also that he had no objection to the sale. When rendering his decision the trial judge said:

"There is no evidence in this case whatever, that any statement made by Mr. Liljeqvist, or any parties representing the Chandler Investment Company chilled the sale, or deterred any person whatever from bidding upon the property," and "so far as the records show the sale was regularly conducted and fairly made."

3. The plaintiff vigorously insists that it could not in a single proceeding foreclose both the first and the second mortgage, for the reason that the first note was the debt of four persons while the other was the debt of only two of them, and because the debt of the four persons was secured by all the land while the other debt was secured by only a part of the lands. It is not neces-

sary to decide whether both mortgages could have been foreclosed by the rendition of two money decrees in one suit, although it may with propriety be said that even though it be assumed that both mortgages could have been foreclosed in a single proceeding, nevertheless they could not have been consolidated into a single money decree: *Peck* v. *Hapgood,* 10 Met. (Mass). 172.   In this connection see: 2 Jones on Mortgages (7 ed.), § 1234; 3 Jones on Mortgages (7 ed.), § 1458. We need not now decide whether both mortgages could have been foreclosed in one suit, for the reason that even though it could have been done, a mere voluntary failure to do it did not of itself operate as a cancellation of the debt and security.   True it is that the second note and mortgage constitute a lien which is junior and subordinate to, and not senior and superior to, the first note and mortgage, and yet it was not entirely inaccurate to say that the purchaser of the Matson parcels took ''subject to the mortgage for $3,500,'' for every purchaser of Matson lands did in truth take subject to whatever right may arise out of the junior mortgage.   While the word ''subject'' might convey different meanings to different persons, still it is the identical word which this court used in an analogous situation: *Sellwood* v. *Gray,* 11 Or. 534, 540 (5 Pac. 196).

4. Notwithstanding the language of Section 423, L. O. L., this court has consistently ruled, beginning with *Sellwood* v. *Gray,* 11 Or. 539 (5 Pac. 196), and ending with *Higgs* v. *McDuffie,* 81 Or. 256 (157 Pac. 794, 158 Pac. 953), that the failure to make a junior encumbrancer a party to the foreclosure of a senior encumbrance does not invalidate the decree, although the foreclosure of the first lien does not bar the equity of redemption available to the junior encumbrancer:

*Osburn* v. *Logus,* 28 Or. 302, 310 (37 Pac. 456, 38 Pac. 190, 42 Pac. 997); *Gaines* v. *Childers,* 38 Or. 200, 203 (63 Pac. 487). In other words, the purchaser of lands sold under a decree foreclosing a first mortgage can, where the holder of a second mortgage was not made a party to the suit in foreclosure, maintain a suit to compel the holder of the second mortgage to redeem, or be foreclosed; but this right to compel a redemption or be foreclosed proceeds on the theory that the second mortgage is still in existence and unpaid. The second note and mortgage given by the Matsons are still uncanceled *and* unpaid. The Chandler Investment Company, through its attorney, stated the truth when it made the announcement about the second mortgage.

The order confirming the sale is affirmed.

                                                    AFFIRMED.

McBRIDE, C. J., and BENSON and BURNETT, JJ., concur.