BROWN v. CRAWFORD et al. (DAVID INV. CO., Intervener).

DAVID INV. CO. v. BROWN et al.

(District Court, D. Oregon. June 27, 1918.)

No. 7426.

1. BANKRUPTCY ⬿143(1)—TITLE OF TRUSTEE.

By Bankruptcy Act, § 7a (Comp. St. 1916, § 9591), trustee in bankruptcy, when appointed, is vested with title to all property of bankrupt as of date of adjudication; property being that which, prior to filing of petition, bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him.

2. BANKRUPTCY ⬿151—RIGHTS AND REMEDIES OF TRUSTEE.

By Bankruptcy Act, § 47, subd. 2 (Comp. St. 1916, § 9631), trustee in bankruptcy is deemed to be vested with all rights, remedies, and powers of creditor holding lien by legal or equitable proceedings as to all property coming into custody of court, and as to other property he is deemed to be vested with all rights and remedies of judgment creditor holding execution returned unsatisfied.

---

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. MORTGAGES ⬤594(5)—RIGHT OF REDEMPTION—JUNIOR INCUMBRANCER.

Ordinarily the right of redemption belongs to the mortgagor or his successor in interest, in reality to the owner of the equity of redemption; but a junior incumbrancer may redeem a prior mortgage or other lien.

4. SUBROGATION ⬤17—RIGHT OF REDEMPTIONER.

The right of foreclosure and the right of redemption being correlative, any person not himself liable as a principal debtor, and compelled to redeem for the protection of his own lien on mortgaged premises, is entitled to subrogation to the rights of the senior mortgagee.

5. MORTGAGES ⬤127(1)—FORECLOSURE—OWNER OF EQUITY OF REDEMPTION AS PARTY.

In the strictest sense, the owner of the equity of redemption is not an indispensable party to a foreclosure, though the object of foreclosure is to extinguish the equity of redemption; the procedure being quasi in rem.

6. SUBROGATION ⬤16—PURCHASER ON FORECLOSURE—SUBROGATION TO RIGHTS OF MORTGAGEE.

A purchaser under foreclosure sale, though the holder of the equity of redemption is not made a party, is subrogated to the rights of the mortgagee, and may require the holder to redeem or be barred of his equity.

7. MORTGAGES ⬤427(1)—FORECLOSURE—HOLDER OF EQUITY OF REDEMPTION AS PARTY—PERSONAL JUDGMENT.

If personal judgment is sought as against holder of equity of redemption, he is an indispensable party to a foreclosure, and the mortgagee cannot have relief without his personal presence.

8. COURTS ⬤343—EQUITY RULES—LACK OF JURISDICTION AS TO SOME DEFENDANTS—JUDICIAL CODE.

By Judicial Code, § 50 (Comp. St. 1916, § 1032), where there are several defendants, and one or more of them are neither inhabitants of nor found within the district in which the suit is brought, and do not voluntarily appear, the court may entertain jurisdiction and proceed to trial as between the parties properly before it: the decree being without prejudice to those not served nor appearing, the rule particularly applying to parties having an interest in the controversy, but whose interest will not be directly affected by decree in their absence.

9. COURTS ⬤343—EQUITY RULES—LACK OF JURISDICTION AS TO SOME DEFENDANTS—RULE OF COURT.

Equity rule 39 (198 Fed. xxix, 115 C. C. A. xxix), as to the absence of persons who would be proper parties, applies not only to a defect of parties, due to their being out of reach of process, but also to parties within the reach of process, whose joinder would oust the jurisdiction of the court, in which contingency the court may in its discretion proceed without making such persons parties; the rule particularly applying to parties having an interest in the controversy, but whose interest will not be directly affected by decree in their absence.

10. EQUITY ⬤90—PARTIES.

In chancery, all persons ought to be made parties who are interested in the controversy.

11. EQUITY ⬤94—PARTIES.

A chancery court cannot proceed at all without the presence of the indispensable parties.

12. MORTGAGES ⬤427(1)—FORECLOSURE—OWNER OF EQUITY OF REDEMPTION AS PARTY—STATUTE AND RULE OF COURT.

In a foreclosure suit, if it is apparent that the presence of the owner of the equity of redemption will oust the court of jurisdiction, it may proceed without him, under Judicial Code, § 50 (Comp. St. 1916, § 1032), and rule of equity 39 (198 Fed. xxix, 115 C. C. A. xxix), as to the absence of persons who would be proper parties.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

13. Courts ⬦264(1)—Federal Courts—Diversity of Citizenship—Ancil-
lary Proceeding.

In a proceeding ancillary to the main suit, as to suit to foreclose a
mortgage, it is not requisite to jurisdiction that there be a diversity of
citizenship as to parties.

14. Bankruptcy ⬦253—Right of Trustee to Redeem from Mortgage.

Under Bankruptcy Act, § 7a, and section 47, subd. 2 (Comp. St. 1916,
§§ 9591, 9631), where an adjudication in bankruptcy did not take place
until more than two years after the purchaser at execution sale of the
bankrupt's realty acquired his sheriff's deed, as to such realty the trustee
in bankruptcy does not occupy the position of lien creditors, and has no
right to redeem from the mortgage in the right of such creditors.

15. Bankruptcy ⬦207—Redemption by Volunteer—Subrogation.

A trustee in bankruptcy, who, without lien, as a volunteer, redeems
the bankrupt's realty from a mortgage, is without the right of subroga-
tion, so as to avail himself of the lien of the mortgage.

16. Mortgages ⬦453—Bill to Foreclose—Prayer for Relief.

Where a bill is of the nature of a bill to foreclose, it has that effect,
though it does not pray such relief.

17. Courts ⬦264(2)—Federal Courts—Diversity of Citizenship.

The fact that residents of the same state as cross-complainant were
made parties to a cross-bill filed in suit for accounting and redemption
from mortgage by a trustee in bankruptcy in the federal court on the
ground of diversity of citizenship does not oust the court of jurisdiction.

18. Mortgages ⬦624(3)—Suit to Redeem—Owner of Equity of Redemp-
tion.

Where the owner of the equity of redemption is not made a party in
a subsequent lienholder's suit to redeem, his equity will not be cut off or
barred by the foreclosure.

19. Mortgages ⬦616—Suit to Redeem—Requirement to Answer or Ap-
pear.

Requiring the owner of the equity of redemption, in a subsequent lien-
holder's suit for redemption, to answer a cross-bill for subrogation to the
extent of interest paid by the cross-complainant, does not suffice to re-
quire him to answer or appear in the main case.

20. Usury ⬦145—Forfeiture of Mortgage to State.

Equity does not look with favor upon forfeitures, and a mortgage will
not be forfeited to the state for usury, unless the case is clear and in-
disputable.

21. Usury ⬦2(2)—Illinois Contracts.

Where notes and a mortgage were executed in Chicago, Ill., though dat-
ed at Portland, Or., the controlling transactions being in Chicago and
the notes being made payable there, where the trustee was a resident,
the documents were Illinois contracts, controlled by Illinois law as to
usury.

22. Usury ⬦31—Mortgage Transaction.

Where mortgagor company received full face value of loan from invest-
ment company which negotiated it, investment company being independ-
ent entity, though controlling majority stock of lumber company, hav-
ing sold notes and mortgage to another company, an independent con-
cern, at a large discount, itself becoming the loser by the discount, and
not the lumber company, the transactions were not usurious, in the ab-
sence of a relationship between all the parties stamping the transac-
tions as a device for evading the law.

23. Mortgages ⬦199(3)—Mortgagees in Possession—Accounting.

Trustee and purchaser of mortgage notes, who took possession under
the mortgage, disposed of personal property, and collected rents and
profits, but, as appears from their accounting, expended more than they

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

received, must account to the mortgagor's trustee in bankruptcy for personalty left in their hands, but for no money receipts.

24. MORTGAGES ⬦200(3)—EXPENSE INCURRED BY MORTGAGEES—RECOUPMENT.
In suit for accounting and to redeem by trustee in bankruptcy of mortgagor company, trustee and company which purchased mortgage notes, who, while in possession under mortgage, paid taxes, etc., are entitled to recoupment and a lien therefor; the mortgage so providing.

In Equity. Suit by Russell H. Brown, as trustee in bankruptcy of the Monarch Lumber Company, a bankrupt, against William W. Crawford, trustee, and the Assets Realization Company, a corporation, wherein the David Investment Company intervenes, making parties defendant, in addition to those already parties, Grayson M. P. Murphy and others. Decree in accordance with the opinion.

This is a suit, primarily by Russell H. Brown, trustee in bankruptcy of the Monarch Lumber Company, for an accounting and redemption against William H. Crawford, trustee, under a mortgage executed by the Monarch Lumber Company, the bankrupt, and the Assets Realization Company, which latter company is the present owner and holder of the mortgage. The Monarch Lumber Company was adjudicated a bankrupt January 29, 1917. The only parties defendant are the two—Crawford, trustee, and the Assets Realization Company. These parties defendant answered, admitting the execution of the mortgage, and praying strict foreclosure. Later the David Investment Company was allowed to intervene and file a cross-complaint, whereby it sets up, in effect, that it, before the purchase by the Assets Realization Company of the notes and mortgage executed by the Monarch Lumber Company, guaranteed the payment of such notes, and that, in pursuance of such guaranty, it was compelled to pay, and did pay, certain installments of interest upon said notes, amounting to the sum of $37,500, and prays that, upon foreclosure of the mortgage, it be subrogated to the rights of the mortgagee, and be allowed that sum upon sale of the premises under the foreclosure.

The David Investment Company, in addition to the complainant and defendants in the main suit, made the following parties defendants: Grayson M. P. Murphy, J. W. Kaste and Jane Doe Kaste, his wife, Brayton & Lawbaugh, Limited, a corporation, John Bjelik, and Rose Springer as administrator of the estate of A. C. Springer deceased. The last-named defendant defaulted. J. D. Moody was later substituted in the stead of John Bjelik. Kaste, Brayton & Lawbaugh, Limited, and Moody, who are all residents and inhabitants of Oregon, answered. Kaste simply states that, by virtue of certain proceedings had in the circuit court of the state of Oregon, one Patton recovered a judgment against the Monarch Lumber Company, whereunder the mortgaged premises were sold at sheriff's sale, and that Kaste is now the owner in fee simple of such premises as successor to Patton; the statutory time for redemption from such sale having expired. In further elucidation, the Patton judgment, through which Kaste deraigns title, was given and rendered, and docketed, September 5, 1913. Execution was issued, and the mortgaged real property was sold November 17, 1913. The sale was confirmed December 24, 1913, and on December 26, 1914, a sheriff's deed to the property was delivered to Patton. Later Patton deeded to Kaste. Brayton & Lawbaugh, Limited, answers, in effect, that it is a judgment creditor, having a lien upon the mortgaged property. The judgment was given and rendered December 8, 1913. This judgment has since been recognized and confirmed by a judgment and decree of the Supreme Court of the state of Oregon, rendered in the case of Brayton & Lawbaugh, Limited, v. Monarch Lumber Co. et al., December 27, 1917. So of the Patton and Bjelik judgments. See 169 Pac. 528. Brayton & Lawbaugh as well controverts the validity of the claim of the David Investment Company, and its right to be subrogated to the rights of the mortgagee. J. D. Moody also controverts the validity of the claim of the David Investment Company and its right to subrogation, and says that the

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

payment of the alleged accrued interest by such company was unlawful and usurious, and that the claim therefor does not constitute a valid demand against the mortgaged property. The Bjelik judgment, assigned to Moody, was made and entered June 30, 1913.

Ralph A. Coan, of Portland, Or., for complainant.

O. A. Neal, of Portland, Or., for defendants Crawford and Assets Realization Co.

Carey & Kerr and C. A. Sheppard, all of Portland, Or., for intervener.

Martin L. Pipes, of Portland, Or., and Dey, Hampson & Nelson, for John W. Kaste.

Platt & Platt and Hugh Montgomery, all of Portland, Or., for cross-defendant Brayton & Lawbaugh.

Maurice W. Seitz, of Portland, Or., for cross-defendant Moody.

WOLVERTON, District Judge (after stating the facts as above). The first inquiry may be directed to whether the bill of complaint states a cause of suit, because of the absence of J. W. Kaste as a party to the bill. It may be stated at the outset that Kaste is now, and was at the time of the institution of the suit, the owner of the equity of redemption of the real property covered by the Monarch Lumber Company mortgage. This much is settled by the decree of the state circuit and Supreme Courts rendered in the case of Brayton & Lawbaugh, Limited, v. Monarch Lumber Co. et al., 169 Pac. 528. The bill is for an accounting, and, upon this branch of the inquiry, it can scarcely be doubted that it states a good cause. It is only as to another branch of the inquiry that its sufficiency may be questioned, namely, whether a subsequent lienholder may maintain a bill for redemption without making the owner of the equity of redemption a party to the bill.

[1, 2] First, let us inquire as to the position of Brown as trustee in bankruptcy of the Monarch Lumber Company, as it respects the title and right to administer the property of the bankrupt for the benefit of the creditors. The trustee, when appointed, is vested with the title to all the property of the bankrupt as of the date of the adjudication in bankruptcy. The property to which the trustee succeeds is that which, prior to the filing of the petition in bankruptcy, the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him. Section 7a, Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 548 [Comp. St. 1916, § 9591]). This covers any interest in the property the bankrupt may have had, however minute, that was subject to transfer by him or levy and sale by judicial process. The statute is designed to be so broad and searching as to comprise all property that the bankrupt may have that may be of use or benefit to him, however small. By subdivision 2, section 47, of the act (Comp. St. 1916, § 9631), the trustee is deemed to be vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings as to all property coming into the custody of the court, and as to property not in such custody he is deemed to be vested with all the rights, remedies,

and powers of a judgment creditor holding an execution duly returned unsatisfied.

The statute deals with the property of the bankrupt, not with that of another, and is designed to vest the trustee with the broadest rights, remedies, and powers commensurate with possessing himself of the property of the bankrupt for the benefit of the creditors. It not only vests the trustee with the rights of the bankrupt, standing in his shoes, but with all the rights of a creditor, whether he or the court is in or out of possession. 2 Remington on Bankruptcy, pp. 943, 944, thus interprets the section:

"As long as other sections of the act give the trustee greater rights than merely those that might be asserted by the bankrupt, the statute must be construed to mean that he takes the bankrupt's title and rights and in addition thereto takes more—takes also the rights of creditors, not only those rights that have been already actually asserted by some creditor but any and all that might have been asserted had the trustee been a judgment creditor who had levied on the property in his custody or who holds an unsatisfied execution as to property not in his custody, as well as the rights of creditors under state law to avoid fraudulent transactions. It is doubtless true that the trustee's title since the amendment of 1910 is the most extensive and complete of any in jurisprudence. It also must be borne in mind that the amendment of 1910, by placing the trustee in the position of an execution creditor with a levy on the property in his custody and with an unsatisfied execution on the property not in his custody, gives him more than the rights, which any creditor might have chanced already to have asserted. It gives him in addition thereto, all rights which would have been obtainable by creditors under state law had the trustee been an officer holding an execution or equitable process in behalf of all creditors."

[3] Ordinarily the right of redemption belongs to the mortgagor, or his successor in interest—in reality, to the owner of the equity of redemption; that is, the owner of the estate redeems it from the incumbrance of the mortgage or other liens that may have attached thereto. But a junior incumbrancer may redeem a prior mortgage or other lien. This is a proposition too well settled, says Judge Woodruff, in Jenkins v. Continental Insurance Company, 12 How. Prac. (N. Y.) 66, to be now open for discussion. The right is recognized by text-writers and the adjudicated cases. McDermutt et al. v. Strong et al., 4 Johns. Ch. (N. Y.) 687; United States v. Sturges, Fed. Cas. No. 16,414; 11 Am. & Eng. Enc. of Law, 219, 222; 27 Cyc. 1809, 1811.

[4] The right of foreclosure and the right of redemption are said to be correlative, and any person, who is not himself liable as a principal debtor, who is compelled to redeem for the protection of his own lien on mortgaged premises, is entitled to subrogation to the rights of the senior mortgagee.

[5] The question has been presented whether the owner of the equity of redemption is, first, an indispensable party to a mortgage foreclosure; and, second, an indispensable party whose presence is necessary to the entertainment of jurisdiction by a federal court. In the strictest sense the owner of the equity of redemption is not an indispensable party to a foreclosure, although it is said the object of the foreclosure is to extinguish the equity of redemption, for, if such owner be not joined as a party, the decree for that reason will not be void. 27 Cyc. 1570, 1571. The procedure is quasi in rem, and so treated by

the authorities. Mr. Justice Brewer, while on the circuit bench, sitting in the district of Minnesota, in Martin v. Pond, 30 Fed. 15, says:

"A foreclosure in the form in which it is ordinarily prosecuted is really, in its nature, partly an action in rem, for the seizure and sale of the property, and partly in personam, for the ascertainment of the debt of the mortgagor, and a personal judgment against him."

He then cites and quotes from Waples on Proceedings in Rem, § 607:

"It has been held that a mortgage suit to foreclose by barring the right of redemption is personal, but that, so far as it is for the condemnation of property to pay debt, it is in rem. Courts, both state and national, have frequently spoken of the mortgage suit, in which there is the object of obtaining an order of sale, as of the latter description. Though nominally against persons, such suits are to vindicate liens. They proceed upon seizure. They treat property as primarily indebted, and, with the qualification above mentioned, they are substantially property actions. In the civil law, they re styled 'hypothecary actions,' and their sole object is the enforcement of the lien against the res. In the common law, they would be different if chancery did not treat the conditional conveyance as a mere hypothecation, and the creditor's right as an equitable lien; so, in both, the suit is a real action, so far as it is against property, and seeks the judicial recognition of a property debt, and an order for the sale of the res."

[6, 7] Again, a purchaser under a foreclosure sale, even though the holder of the equity of redemption is not made a party, is subrogated to the rights of the mortgagee, and may require the holder to redeem or be barred of his equity, so that, as expressed by Cyc., supra, the holder of the equity of redemption is not in the strictest sense an absolutely necessary party to a foreclosure. If, however, a personal judgment is sought as against the holder, he would be an indispensable party, and the mortgagee could not have relief without his personal presence.

[8, 9] As it relates to the jurisdiction of a federal court, the question is to be resolved by the application of section 50 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1101 [Comp. St. 1916, § 1032]) and equity rule 39 (198 Fed. xxix, 115 C. C. A. xxix). The Code seems to contemplate that where there are several defendants, and one or more of them are neither inhabitants nor found within the district in which the suit is brought, and do not voluntarily appear, the court may entertain jurisdiction, and may proceed to trial as between the parties properly before the court; but the decree will be without prejudice to those not served nor appearing. Equity rule 39 is somewhat broader, in that it applies, not only to a defect of parties due to their being out of reach of process, but also to parties within the reach of process whose joinder would oust the jurisdiction of the court. In the latter contingency the court may, in its discretion, proceed without making such persons parties. Hughes, Fed. Procedure (2d Ed.) 256, 257. As it relates to equity, the statutory enactment and the rule are but declaratory of the principles and practice previously enforced by the courts. Shields v. Barrow, 17 How. 130, 141, 15 L. Ed. 158; Minnesota v. Northern Securities Co., 184 U. S. 199, 236, 22 Sup. Ct. 308, 46 L. Ed. 499; Detweiler v. Holderbaum (C. C.) 42 Fed. 337, 338.

[10] As affecting the jurisdiction of the court, there are certain qualifications to the general rule in chancery that all persons ought to be made parties who are interested in the controversy, in order that there may be an end to litigation. These qualifications arise out of public policy and the necessities of particular cases. The classifications are three: First, indispensable parties, that is, such as will be directly affected by the decree; second, parties having an interest in the controversy, but whose interests will not be directly affected by a decree rendered in their absence; and, third, parties not interested in the controversy between the immediate litigants, but who have an interest in the subject-matter, which may be conveniently settled in the suit. Williams v. Bankhead, 19 Wall. 563, 571, 22 L. Ed. 184.

[11, 12] As to parties falling within the first classification, the court cannot proceed at all without their presence. It is as to the second classification that section 50 of the Code and the thirty-ninth rule of equity practice particularly apply. If their joinder would oust the court of jurisdiction, the court may in its discretion proceed without their presence. The owner of the equity of redemption in a foreclosure suit, I am persuaded, falls within this classification, and, if it is apparent that his presence will oust the court of jurisdiction, it may proceed without him.

[13] The cross-bill filed by the David Investment Company was the inauguration of a proceeding ancillary to the main suit. In such a proceeding, it is not requisite to jurisdiction that there be a diversity of citizenship as to parties. As said by Judge Deady, in First National Bank of Salem v. Salem Capital Flour Mills Co. (C. C.) 31 Fed. 580, 583:

"In suits not original, but ancillary to litigation already pending in a Circuit Court of the United States, the citizenship of the parties is wholly immaterial. * * * If the citizenship of the parties in the original suit is sufficient to give the court jurisdiction, it has jurisdiction of the cross-bill therein."

This statement of the law has received approval by the Circuit Court of Appeals of this circuit, in Lilienthal v. McCormick, 117 Fed. 89, 54 C. C. A. 475. Hawley, District Judge, delivering the opinion of the court in that case, says:

"Consolidations, cross-bills, and interventions do not oust the jurisdiction of the court in the main suit, whatever the citizenship of the parties thus brought in may be."

And in Desty on Federal Procedure, vol. 1, p. 400, is found this statement of the law:

"An original bill and a cross-bill thereto constitute but one cause, and when a Circuit Court has jurisdiction of the former by reason of the citizenship of the parties thereto, it has jurisdiction of the latter without reference to such citizenship."

The subject is exhaustively and ably treated of by Judge Hunt in Ames Realty Co. v. Big Indian Mining Co. (C. C.) 146 Fed. 166. This case is cited as authoritative by the Supreme Court in Rickey Land & Cattle Co. v. Miller & Lux, 218 U. S. 258, 263, 31 Sup. Ct.

11, 54 L. Ed. 1032; the Supreme Court case approving the principle. See, also, Railroad Co. v. Chamberlain, 6 Wall. 748, 18 L. Ed. 859, Freeman v. Howe et al., 24 How. 450, 16 L. Ed. 749, Osborne & Co. v. Barge (C. C.) 30 Fed. 805, and Continental Trust Co. v. Toledo, St. L. & K. C. B. Co. (C. C.) 82 Fed. 642, same case, on appeal to the Circuit Court of Appeals, 95 Fed. 497, 36 C. C. A. 155.

[14, 15] These principles having been ascertained, let us proceed to their application here. If the trustee were standing in the right of lien creditors as it pertains to the real property described in the mortgage, his right to redeem from the mortgage would be clear. As to this property, he does not occupy that position. Kaste's predecessor acquired his sheriff's deed to the property December 26, 1914. The Monarch Lumber Company was not adjudged a bankrupt until January 29, 1917, something over two years later than the date of the sheriff's deed, which conveyed all the right of the Monarch Lumber Company away to Patton. The creditors thereafter, unless they had in some way, by creditors' bill or otherwise, impressed a lien, could have no right in the property, for it went to Patton, and they could have no further recourse to it. The trustee as to this property occupies no better position than the creditors, and he could have no lien or other right to property that did not belong to the bankrupt at the date of the filing of the petition in bankruptcy or within four months prior thereto. It is therefore apparent that the trustee, having no lien by reason of the provisions of the bankruptcy act or otherwise, upon the mortgaged property, is not in a position to exercise the right of redemption from the mortgage. Without the lien, if he did redeem from the mortgage, he would occupy the position of a volunteer, and would be without the right of subrogation so as to avail himself of the lien of the mortgagee.

[16] It scarcely can be questioned that Crawford and the Assets Realization Company are entitled to their foreclosure. I am treating the answer of these parties as a bill to foreclose. It is of that nature, although that is not the relief prayed. The effect is the same. Kaste, while a proper party to the bill of complaint, was not an indispensable party, and the jurisdiction of the court is not affected by reason of his not being made a party to the bill.

[17] The fact that Kaste and others who are residents within the state of Oregon were made parties to the cross-bill does not oust the court of jurisdiction. This and the deduction next previous are not affected by the question of the present possession of the property, while the fact of possession may have a bearing.

[18,19] Kaste not having been made a party in the main case, his equity of redemption will not be cut off or barred by the foreclosure. While made a party to the cross-bill, he was not called upon to plead or answer to the original bill, nor to the answers thereto of Crawford and the Assets Realization Company. His being required to answer to the cross-bill does not suffice to require him to answer or appear in the main case. While the cross-bill sets up the mortgage, it is only set up with a view on the part of the David Investment Company of procuring subrogation to the extent of intertest paid by it, and which

it was compelled to pay, and it makes no contention as to the amount due on the mortgage proper to the mortgagees. Kaste has a right to be heard as to this, but, not being a party to the main suit, he is without opportunity to propound a controversy upon the inquiry, or at least he is not required to enter upon such inquiry, and in his last amendment of his answer he has not done so. I do not see how he can be barred of his equity of redemption under the issues made by the respective pleadings and the manner in which they are brought upon the record. His position is not affected by the case of Higgs v. McDuffie, 81 Or. 256, 157 Pac. 794, 158 Pac. 953, nor can it be until his equity is foreclosed by a proper bill against him.

As to some of the creditors, Kaste has declared his purpose to subordinate his equities to their demands, and this, I assume, rises to the dignity of a legal obligation. As to these creditors, the trustee stands in their relation, and is in a position to insist that their rights be observed; but the pleadings nowhere set forth the facts essential to an adjudication respecting the relative rights of the parties concerned, and the court cannot attempt to settle the controversy here.

[20] Brayton & Lawbaugh and Moody were also brought in by the cross-bill. They set up their judgment liens, which are subordinate to the mortgage. They assail the validity of the mortgage, in that they assert that it is usurious, and should be forfeited to the state. This contention I will now consider. Equity does not look with favor upon forfeitures, and the case must be clear and indisputable before the court will impose so harsh a measure.

[21] Without going into the testimony at length, I am persuaded that these notes and the mortgage are Illinois contracts. Crawford, the trustee, is a resident and inhabitant of Chicago, Ill., and was at the time these documents were executed. The documents were all executed in Chicago, and, although they purport to be dated at Portland, Or., the controlling transactions were had and negotiated in Chicago, the final execution was there completed and terminated, and the notes are made payable there. This renders the documents Illinois contracts. DeWolf v. Johnson, 10 Wheat. 367, 6 L. Ed. 343; Ringer v. Virgin Timber Co. (D. C.) 213 Fed. 1001. Being Illinois contracts, there is, under the law of that state, no taint of usury.

[22] Further than this, it is by no means clear that the notes and mortgage are tainted with usury, even if they may be considered to be Oregon contracts. The Monarch Lumber Company received, beyond question, the full face value of the loan. The David Investment Company paid it that, or rather the difference between what the Assets Realization Company paid and the face of the notes. The David Investment Company, while it controlled the majority stock of the Monarch Lumber Company, was an independent entity. It sold the notes and mortgage to the Assets Realization Company, an entirely independent concern, at a large discount. It became the loser by the discount, and not the Monarch Lumber Company, the real mortgagor. I am not prepared to say that the transactions thus consummated render them usurious. Notes of the kind are bought and sold every day, and the price is regulated by the value of the securities on the market;

and it does not seem to me that there was such a close and interlocking relationship between all the parties to the transactions as to stamp the transactions as a device for evading the law or to render them usurious under the statute.

[23] Coming, now, to the accounting, there is little to be said. Crawford and the Assets Realization Company went into possession of the property. Attempts were made to form other corporations for readjusting the mortgage and debtor obligations, and to transfer the property to these concerns; but they all came to naught, and the Supreme Court of the state has so declared. Nevertheless the mortgagee, either by itself or through the agency of one or more of these concerns, continued in possession until the trustee in bankruptcy succeeded thereto. These parties assumed possession as mortgagees under the terms of the mortgage. They did what was deemed necessary to preserve the property, disposed of a large amount of personal property, and collected some rents and profits. They incurred obligations in the care of the property, and advanced taxes and funds to take care of the insurance, and have rendered a full accounting respecting the property and funds coming into their hands. It appears that they have expended more than they received, but have left in their hands some odds and ends of personalty of small value, consisting of a stock of moldings and a few groceries in the cookhouse. The trustee is entitled to these on the accounting, but for no money receipts.

It is unnecessary to state the account further than this, as it is entirely manifest from the testimony that neither Crawford nor the Assets Realization Company owes the trustee anything, or is accountable to him for anything except the small amount of personal property above mentioned. The account with the Monarch Lumber Company by Crawford, trustee, and the Assets Realization Company has been rendered. It appears quite clearly from the accountant's statement that the trustee and the Assets Realization Company, while in possession, expended $64,765.53 over and above the amount received by them. Of this amount $41,444.13 was for taxes and insurance. I will not stop to make a restatement thereof. Counsel for these parties have set the same forth in their brief quite impartially, and their deductions appear to be warranted by the testimony.

[24] The trustee, Crawford, and the Assets Realization Company, were compelled to enter into the possession of the property to protect it and prevent its disintegration. Of necessity they were required to carry the insurance against fire loss, and to pay the taxes, to prevent the dissipation of the property. To this was added the expense of watchmen and necessary repairs, to prevent threatened injury. The mortgage, by its sections 6, 7, 10, and 12, article 2, provided for the payment of these expenses by the mortgagee in case he was required to enter into possession for breach of the mortgage conditions and for recoupment against the property, for which a lien was reserved. The amount of the recoupment prayed for is $50,000, and to this I am of the opinion that the mortgagee and the Assets Realization Company are entitled, and the same will be declared a lien upon the property under the mortgage. The amount due upon the mortgage is the prin-

cipal, $300,000, and interest at the rate of 7 per cent. per annum from September 1, 1913.

The David Investment Company guaranteed the payment of the mortgage notes, and in course of time was compelled to pay, and did pay, the first two years' interest falling due thereon, or the sum of $37,500, for which it is entitled to be subrogated to the lien of the mortgage; and the decree will so provide.

---

⬤⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes