Argued November 28, *reversed and remanded* with directions December 18, 1917.

# HAWKENSON *v.* ROSTAD.

### (169 Pac. 350.)

**Judgment—Lien—Interest of Debtor—Voluntary Conveyance.**

1. A judgment is a lien only on the actual interest of the judgment debtor in land, so that a creditor obtaining judgment after a voluntary conveyance of land to the debtor, who immediately reconveyed by an unrecorded deed, had no lien on the land.

[As to estates and interests affected by judgment lien, see notes in 93 Am. Dec. 345; 117 Am. St. Rep. 776.]

**Mortgages—Priority—Judgment.**

2. A judgment creditor of one who accepted a voluntary conveyance of land and immediately mortgaged it to the grantor, and also made a reconveyance which was not recorded has no greater equity than the judgment debtor, and cannot defeat the mortgage in the hands of an assignee on the ground that the transaction between the parties was fraudulent.

**Mortgages—Foreclosure—Necessary Parties.**

3. Under Section 41, L. O. L., providing that, when complete determination of the controversy cannot be had without the presence of other parties, the court shall cause them to be brought in, where an owner voluntarily conveyed land, and the grantee gave back notes and a mortgage, which was recorded, and made a reconveyance, which was not recorded, and foreclosure suit was brought by the assignee of the mortgage, who alleged the reconveyance, the owner was a necessary party.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.   Statement by MR. JUSTICE BURNETT.

The plaintiff brings suit to foreclose a real estate mortgage executed by Rostad and wife to one Thorsen to secure their three promissory notes given to the latter, one for $20,000 and two others each for $5,000. The plaintiff claims to be the owner of the large note and says that the defendant Flanders owns the other two.   Both he and Flanders aver that they acquired title to them prior to their maturity.   In his primary pleading the plaintiff says he does not ask for any personal judgment against the maker of the notes, or his

wife, for any amount remaining unpaid after the sale of the mortgaged premises, and expressly waives any right he has to a personal judgment. It is stated that the defendant People's Bank claims some interest in or claim upon the premises, but that the same is inferior to the lien of the mortgage. The People's Bank denies everything in the complaint except the record of the mortgage and that it claims an interest in the land. Further defending it avers the recovery by it of a judgment docketed January 20, 1915, against Rostad who ever since January 12, 1912, has been the owner of the land described in the mortgage; that at the date last mentioned Rostad had been for a long time an employee of the Multnomah State Bank of which Thorsen was an officer and stockholder and held the like relation to the Scandinavian American Bank; that many other owners of stock in the Multnomah State Bank were also members of the other bank, and that Rostad was subject to their control and order. The answer proceeds to allege, in substance, that on and prior to the date of the mortgage Thorsen procured Rostad to execute the notes in question and secure them by mortgage upon the land on the representation that they were to be in form only; that no consideration should be paid therefor; that the maker should not be liable or bound by the notes or mortgage; that they would not be transferred to any other person; that the mortgage should not be recorded, assigned, or transferred; that Thorsen should hold all the instruments in his own possession; that they should not become an obligation against Rostad or his wife; that other members and stockholders in the Multnomah State Bank and in the Scandinavian American Bank advised Rostad to execute the notes and mortgage and

86 Or.—45

assured him that no liability would be incurred in so doing; that thereafter on January 12, 1912, relying upon such assurances, believing the same to be true, having full faith and confidence in Thorsen and the other officers of the two banks, and by reason of the influence brought to bear upon him on account of his employment, Rostad and his wife executed the notes and mortgage. It is also said in the answer that the instruments were not executed or delivered as accommodation paper nor for the purpose of Rostad's lending credit to Thorsen; that the representations and assurances of Thorsen to the Rostads were false and fraudulent, made with intent to, and actually did deceive them; that they relied upon them and being so induced, executed the notes and mortgage for which no consideration of any nature or kind was paid to or received by them. The People's Bank further charges that afterwards Thorsen negotiated the $20,000 note to the Scandinavian American Bank of which he was a stockholder and director and which institution through its managing officers, directors, and agents knew all the circumstances under which the Rostads executed the notes and mortgage as stated in the answer; that the bank paid no consideration for the papers and afterwards assumed to transfer the $20,000 note and mortgage to the plaintiff, who also knew all the history of the transaction before he took title, and that he likewise paid nothing for them. The same charge is made against the defendant Flanders to the effect that he knew the origin of the $5,000 notes and the circumstances under which they were executed. The latter filed an answer and cross-complaint combatting the pleading of the People's Bank so far as the same sought to make its judgment superior to his claim. The plaintiff also replied traversing all the questions

of fraud and want of consideration raised by the answer of the People's Bank and further stating, in substance, that although Rostad had a deed of conveyance from Thorsen for the land, yet the former paid nothing for the conveyance and simply held the naked legal title of record in trust for the latter who, as part of the same transaction, took back from Rostad and wife a conveyance to himself of the premises, and has at all times been the exclusive owner of the property and in possession of the same. The Circuit Court rendered a decree foreclosing the mortgage as prayed for by the plaintiff and Flanders, declaring the same to be a prior lien upon the realty subject only to the lien of Multnomah County for unpaid taxes and directing a sale for the satisfaction of the mortgage without personal judgment against the makers of the notes. The People's Bank appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

For appellant, People's Bank, there was a brief and an oral argument by *Mr. Custer E. Ross.*

For respondent, O. J. Hawkenson, there was a brief and an oral argument by *Mr. Charles A. Johns.*

For respondent, George C. Flanders, there was a brief over the name of *Messrs. Cake & Cake,* with an oral argument by *Mr. William M. Cake.*

For respondents, H. Rostad and Celia M. Rostad, there was a brief prepared and submitted by *Messrs. Clark, Skulason & Clark.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1, 2. The testimony discloses substantially the following state of affairs: Thorsen was the owner of the land

in question. He procured Rostad to take a deed to the premises, execute the notes mentioned and with his wife to secure the same by a mortgage upon the realty. At the same time and as part of the same transaction Thorsen also took a return deed from Rostad and wife conveying the land back to him. This latter instrument was withheld from record, but the deed from Thorsen to Rostad and the latter's mortgage were recorded about the time of their execution. There is no controversy but that Rostad paid nothing whatever for the land and received nothing for the notes and the mortgage. In short, the effect of the transaction was that Thorsen used Rostad to produce some bankable paper secured by the mortgage upon land really belonging to the former. The evidence is undisputed that Thorsen negotiated the large note to the Scandinavian American Bank prior to maturity and received therefor $20,000 in coin; and further, that prior to the maturity of either of the $5,000 notes he indorsed them to Flanders for value and that the latter knew nothing whatever of the transaction between the original parties beyond what appeared of record at the time. The evidence does not in any respect sustain the charge that Thorsen represented to Rostad that the notes should not be negotiated or transferred to any one. The judgment against Rostad in favor of the People's Bank was not recovered until more than three years after the execution of the notes and mortgage. In substance the contention of the People's Bank is that because on the face of the record Rostad had the legal title to the land, its judgment became a lien upon the premises upon its rendition and docketing; and that the transaction between Thorsen and Rostad was fraudulent and void as against the latter in whose shoes the People's Bank is entitled to stand

and thus make its judgment paramount to the mortgage. It is plain that Rostad never had any actual estate in the land but merely held the bare legal title and that as part of the transaction he encumbered it with the mortgage. It is well settled in this state that a judgment is a lien only upon the actual interest of the judgment debtor in the land: *Meier* v. *Kelly,* 22 Or. 136 (29 Pac. 265); *Dimmick* v. *Rosenfeld,* 34 Or. 101 (55 Pac. 100); *Smith* v. *Farmers & Merchants' Bank,* 57 Or. 82 (110 Pac. 410); *Gladstone Lumber Co.* v. *Kelly,* 64 Or. 163 (129 Pac. 763). As viewed by a court of conscience Rostad had no interest in the realty not having paid anything whatever for it. Having put nothing into the land it is certain his creditors can take nothing out of it. The People's Bank cannot reap where neither it nor Rostad has sown. Moreover, in equity the judgment creditor cannot assume any better position than could its debtor of record. He cannot accept the benefits of the transaction between himself and Thorsen in part, without adopting the whole of it. This includes not only the execution of the deed from Thorsen to Rostad, but also the mortgaging back of the property to the amount of the notes in question. If he would escape the effect of the notes and mortgage, or if the People's Bank would do the same thing standing in his shoes, in a court of chancery they must do the equity of restoring what they got by virtue of the deal of which the mortgage was a part. There is no pretense that this has been done or offered.

3. It was urged at the argument, although there is no assignment of error on that ground, that the decree was void because Thorsen was not made a party notwithstanding that in the reply of the present plaintiff it appears for the first time that Rostad in addition to

the mortgage reconveyed the land to his grantor, which conveyance, however, was not recorded. Reliance is had upon the case of *Osborn* v. *Logus,* 28 Or. 302 (37 Pac. 456, 38 Pac. 190, 42 Pac. 997). That was a suit to foreclose mechanics' liens wherein it was insisted that the contractor was a necessary party defendant. In discussing this point the court distinguished between a person having a subsequent lien and one having a prior encumbrance and said:

"Now the result of all this is that the owner of the equity of redemption is an indispensable party, and without him the suit cannot proceed. Subsequent lienors are considered necessary parties but their absence from the record does not perforce of that fact render the proceeding a nullity; but interested parties may require that they be brought in for their protection, and proper parties may be brought in if deemed necessary. The owner, of course, is an indispensable party and his absence would be fatal to the proceeding; a decree without him would be a nullity."

In *Byrd* v. *Cooper,* 69 Or. 406, 410 (139 Pac. 104), in an opinion by Mr. Justice Moore the opinion in *Osborn* v. *Logus, supra,* is thus discussed:

"What was there said about the owner being an indispensable party was evidently intended to be used by way of illustration and comparison. But however that may be it is believed that the language so employed is a correct declaration of the law applicable to the question here involved. From this assertion it follows that if the owner of real property whose conveyance of the title thereto is duly recorded at the time a suit is brought to foreclose a mechanic's lien attaching to the premises, is not then made a party or brought in within the time limited by the statute therefor, any decree that might be rendered in that suit is not binding on him."

The instant case is somewhat different from *Sellwood* v. *Gray,* 11 Or. 534 (5 Pac. 196). There the

plaintiff had loaned to one Carter a sum of money secured by mortgage on certain realty. Gray afterwards secured a judgment against Carter. Sellwood foreclosed his mortgage but did not serve process upon Gray. He, however, took a decree against Carter and other parties including the mortgagor and bought in the property. Afterwards Gray issued execution upon his judgment and sold the land, becoming the purchaser at his own sale. Sellwood then instituted a suit to compel Gray and others to redeem from his mortgage or that it be foreclosed. In this situation Mr. Justice LORD used this language:

"When, therefore, the plaintiff instituted his suit of foreclosure against Carter, the mortgagor, and obtained a decree for the sale of the property, without making the defendant, Gray, a party, the proceeding, as to him, was a nullity. But the sale effected some important results. Except as to the defendant, Gray, who was not bound by it, it had operated to cut off the right of the mortgagor to redeem, and to change the ownership of the property from the mortgagor to the mortgagee, who had become the purchaser."

The distinction is that here the owner of the estate is not before us; while there he was a party to the suit, and hence the title was in the power of the court. Not so, however, in the present juncture in which the plaintiff asks us to do the vain thing of ordering a sale of the land without having jurisdiction of Thorsen, its owner. While we might order a sale of his encumbered property if we had jurisdiction of him and not of the junior encumbrancers, as in the Sellwood foreclosure, which, however, would not affect them, the precept will not work the other way and allow us to dispose of his land without his consent or giving him his day in court on that question, although all subsequent lienholders are in court.

This makes applicable Section 41, L. O. L.:

"The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a complete determination of the controversy cannot be had without the presence of other parties, the court shall cause them to be brought in."

It is true that in *Wilson* v. *Tarter*, 22 Or. 504 (30 Pac. 499), a part owner of the land included in the mortgage was not made a party defendant, but the foreclosure proceeded to sale. Afterwards the missing title holder was allowed to maintain a suit to compel the mortgagee to elect between redemption of the whole premises or make conveyance of the parcel to the plaintiff. We are not required, however, to visit such complication upon the present litigants. Neither would it be seemly for us to launch upon the business community a title which would be a nullity because the owner of the fee was not a party to the decree directing the sale of the realty involved. As a proper solution of the case, therefore, the decree of the trial court will be reversed and the cause remanded with directions to that tribunal to cause the owner of the fee and any other necessary parties to be brought in for the purpose of making complete foreclosure in this suit.

REVERSED AND REMANDED WITH DIRECTIONS.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.